**Justin YOUNG, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 95–44.**

Supreme Court of Wyoming.

Oct. 13, 1995.

Justin Young, pro se.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Mary Beth Wolff, Senior Assistant Attorney General, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR & LEHMAN, JJ.

MACY, Justice.

Appellant Justin Young appeals from the district court's order which denied his motion to correct his sentences.

We reverse and remand.

### ISSUES

Appellant offers the following issues for our review:

I. Was it an abuse of judicial discretion for Judge Spangler to refuse to review and correct Appellant's motion to correct sentence credit?

II. Did Appellant make a sufficient prima facie showing of improper calculation of credit for presentence confinement to warrant requested hearing and correction?

III. Was failure of defendants' public defender to properly address issue of Appellant's presentence credit at time of sentencing and after notification of improper credit by Appellant ineffective assistance of counsel?

### FACTS

Appellant was originally charged with felony property destruction and with conspiracy to commit property destruction. He had been released on bond while the disposition of that case was pending when he was charged with five counts of burglary. Appellant was again released on bond. While those two cases were pending, Appellant was charged with another count of burglary. He was taken into custody on October 11, 1992, and he remained in custody until approximately October 27, 1992.

Pursuant to a plea agreement, Appellant pleaded guilty to one count of property destruction in the first case, one count of burglary in the second case, and another count

of burglary in the third case. In each of these cases, Appellant was sentenced to serve two years of supervised probation. One of the probation conditions specified that Appellant would complete the program at Community Alternatives of Casper as a resident. The district court ordered the probationary sentences in all three cases to run concurrently.

Appellant reported to the Community Alternatives facility on December 11, 1992. After signing the rules and policies and initialing the escape clause, Appellant signed out so that he could report to his job at Hardee's. He failed to return to the facility at his approved sign-in time, thereby violating the limits of his Community Alternatives confinement. He was charged with escape from an official detention under WYO.STAT. §§ 6–5–206(a)(ii)(A) (1983) and 7–18–112 (1985) (amended 1995). Appellant was arrested on either January 7, 1993, or January 22, 1993, and was held in the Natrona County Detention Center until approximately March 12, 1993. Meanwhile, the State filed a petition for the revocation of his probationary sentences.

Appellant pleaded guilty to the escape charge, and he was sentenced, pursuant to an agreement, to serve a term of not less than two years nor more than three years at the Wyoming State Penitentiary. The district court ordered the penitentiary sentence to run concurrently with "any other sentence received," with a credit being awarded toward his minimum and maximum sentences for the thirty-four days that he served in the Natrona County jail and at Community Alternatives. The district court also recommended that Appellant complete the boot camp program.

On February 25, 1993, the district court revoked Appellant's probationary sentences and sentenced him to serve a penitentiary term of not less than two years nor more than three years on each count in the three cases. The district court ordered the sentences to run concurrently with each other and with Appellant's escape sentence, with a credit being awarded toward his minimum and maximum sentences for the seventy-four days and the three days that he served in the

Natrona County jail and at Community Alternatives, respectively. The record indicates that Appellant was transferred to the penitentiary sometime around March 12, 1993. He was thereafter transferred to boot camp on May 4, 1993.

Near his completion of the boot camp program, Appellant petitioned the district court to reduce his sentences. The district court granted his request and ordered that he serve two years of supervised probation for each of the counts in the three cases and for the escape, with one of the probation conditions being that he complete the program at Community Alternatives as a resident. The district court also ordered the probationary periods to run concurrently with each other.

Appellant reported to the Community Alternatives facility on August 8, 1993, and was there until he again escaped on September 27, 1993. Another charge of escape from an official detention under §§ 6–5–206(a)(ii)(A) and 7–18–112 was filed, and another petition was filed to revoke the probationary sentences which had been previously ordered.

Appellant was arrested on January 17, 1994, and was incarcerated in the Detention Center from that date until March 15, 1994, when his probationary sentences were revoked and he was sentenced to serve a term in the Wyoming State Penitentiary of not less than two years nor more than three years, with a credit being awarded for the 217 days that he served at boot camp, at Community Alternatives, and at the Detention Center.

After Appellant pleaded guilty to the second escape charge, the district court ordered him to serve a term in the Wyoming State Penitentiary of not less than one year nor more than two years, with a credit being awarded toward his minimum and maximum sentences for the fifty-seven days that he served at the Detention Center. The district court ordered this second escape sentence to run consecutively to any sentence which Appellant was then serving.

Appellant filed a motion to correct his sentences, claiming that the 217 days which were awarded against his concurrent sentences had been erroneously calculated and

that he was entitled to be awarded additional credit. The district court denied his motion. It is from that denial that Appellant makes this appeal.

## DISCUSSION

■ In his first and second contentions, Appellant maintains that the district court abused its discretion when it refused to review Appellant's motion and correct the amount of credit which had been awarded and that he made a sufficient showing that the amount of credit he was given had been miscalculated.

> Our established rule is that, on appeal, we do not set aside a sentence if it is within the legislatively mandated minimum and maximum terms in the absence of a clear abuse of discretion.

*Betzle v. State*, 847 P.2d 1010, 1024 (Wyo. 1993). A defendant who has been confined prior to being sentenced because of his or her inability to post bail is entitled to receive a credit against the sentence for the amount of his or her presentence confinement. When a sentencing court erroneously fails to award a presentence confinement credit, a later denial of a motion to correct the illegal sentence constitutes an abuse of discretion.

*Eustice v. State*, 871 P.2d 682, 684 (Wyo. 1994) (some citations omitted). *See also Yellow Bear v. State*, 874 P.2d 241, 244 (Wyo. 1994).

■ Under our current rules of criminal procedure, a sentence must contain both a finding of the amount of the presentence confinement and either an express award or an express denial of credit for that presentence confinement. W.R.Cr.P. 32(c)(2)(E) & (F). When a sentence fails to comply with W.R.Cr.P. 32(c)(2)(E) or (F), the accused is entitled to have a limited remand for a new award of credit unless we are able to fashion a correct award from the record. *Eustice*, 871 P.2d at 685. "On remand and resentencing, 'we assume appellants will not be punished for exercising their constitutional right

to appeal.' " 871 P.2d at 685–86 (quoting *Griebel v. State*, 763 P.2d 475, 478 (Wyo. 1988)).

■ In *Eustice*, we acknowledged that issues on presentence confinement credit plague our docket. 871 P.2d at 685. We, therefore, deemed it appropriate to refine our standard procedure for awarding presentence confinement credit and held that, in future cases which involve challenged presentence confinement credit, the procedure recommended by the American Bar Association will govern:

> (c) In reaching its findings on all controverted issues (standard 18–6.6(a)(i)), the sentencing court should employ the preponderance of the evidence standard and may treat the contents of a verified presentence report as presumptively accurate, provided, however, that material factual allegations made in the presentence report and effectively challenged by the defendant should not be deemed to satisfy the government's burden of persuasion unless reasonable verification of such information can be shown to have been made (standard 18–5.1(c)) or adequate factual corroboration otherwise exists in the sentencing or trial record.

> III ABA STANDARDS FOR CRIMINAL JUSTICE Standard 18–6.4(c) at 448 (2d ed. Supp. 1986).

871 P.2d at 686. We went on to declare that, in future sentencing proceedings, "if the accused has access to, and fails to [challenge], the information used by the sentencing court to fix the amount of the credit, we will presume, except in extraordinary cases, that the accused acknowledged the essential accuracy of that information."[1] *Id. See also Alexander v. State*, 823 P.2d 1198 (Wyo.1992).

In the case at bar, the sentencing hearing was conducted ten days before we published our *Eustice* decision in which we directed defendants to challenge the amount of credit they are awarded when they disagree with that amount. We, therefore, have reviewed

---

**1.** Appellant argues that he did not have "access" to the information used by the sentencing court to fix the amount of his credit. He, however, does not explain why he did not have access to this information or what efforts he made to obtain the same, and thus we cannot entertain this argument.

the record to determine whether Appellant may be entitled to be awarded additional credit. Appellant's maximum terms fall below the maximum sentences which could have been imposed for the various crimes for which he was sentenced, and his minimum terms are less than ninety percent of his maximum terms. *Eustice*, 871 P.2d at 684; WYO.STAT. §§ 6-3-201(b)(iii) (1985), -301(b) (1985), 6-5-206(a)(i) (1983). We must, therefore, examine whether the district judge abused his discretion in denying Appellant's motion to correct his sentences.

The various sentences in this case included express awards of credit as well as the amounts of credit which were being awarded. We cannot, however, confirm those amounts because the precise amount of credit Appellant is entitled to be awarded cannot be determined from the record with an adequate degree of certainty. The following common-sense interpretation of the record, nonetheless, demonstrates that it is arguable that the time during which Appellant was incarcerated was more than the time for which he was awarded credit.

The first incarceration which was documented in the record occurred after Appellant had committed the burglary in the third case and lasted from approximately October 11, 1992, until October 27, 1992, or around sixteen days, at which time he was sentenced to serve concurrent probationary terms. In accordance with one of the probation conditions, Appellant reported to the Community Alternatives facility on December 11, 1992, but he escaped on that same day, giving him credit for one day. He was arrested on either January 7, 1993, or January 22, 1993, for his first escape. Appellant pleaded guilty to the escape charge on February 9, 1993, and the district court revoked his probationary sentences on February 25, 1993. The record indicates that, from the date of his arrest, Appellant was in the Detention Center until approximately March 12, 1993, when he was transferred to the Wyoming State Penitentiary. The exact date of this transfer is unclear from the record. It appears that

Appellant remained at the penitentiary until May 4, 1993, when he was moved to boot camp. He completed the boot camp program and petitioned the district court for a reduction of his sentences. The district court granted his request and ordered him to serve probationary terms. As was required in one of the probation conditions, Appellant reported to Community Alternatives on August 8, 1993, where he stayed until he again escaped on September 27, 1993. Although we were not able to determine whether these events resulted in Appellant being constantly incarcerated from the date of his January arrest to September 27, 1993, in the event that they did, Appellant would be entitled to be awarded credit for the entire time, or at least 248 days.

Taking this scenario into account, we conclude that Appellant may be entitled to receive credit for the sixteen days that he spent in the Detention Center in 1992, the one day that he spent at the Community Alternatives facility in 1992, and the 248 days that he was incarcerated in 1993, for a total of at least 265 days.

On January 17, 1994, Appellant was arrested for his second escape, and he remained in custody until March 15, 1994, when his probationary sentences were revoked.[2] This last incarceration equalled fifty-seven days, and Appellant does not appeal from this award as credit for this incarceration was correctly granted toward the term which Appellant was sentenced to serve for his second escape.

Since the sentencing hearing in which Appellant was awarded 217 days of credit had been conducted ten days before our *Eustice* decision was published and Appellant did not have notice of our directive which places the burden on defendants to challenge the accuracy of the amounts of credit that they are awarded, we must reverse and remand this case so that an accurate award of credit can be calculated. We emphasize, however, that, despite our decision in this case, we have adopted the procedure recommended by the American Bar Association which we reiterat-

---

2. Appellant was actually in custody from January 17, 1994, until June 13, 1994. Since his probation had been revoked on March 15, 1994, the period of time he was incarcerated after March 15, 1994, was part of his sentence and not presentence confinement.

ed herein and have directed that a defendant shall challenge the award of credit at the sentencing hearing before he may bring the issue to this Court.

In his last contention, Appellant claims that his public defender's failure to properly address the issue of credit constituted ineffective assistance of counsel. The State argues that it is not proper to consider this issue in an appeal from a denial of a motion to correct an illegal sentence. We agree with the State and, therefore, decline to address the issue. *See Brown v. State,* 894 P.2d 597, 598 (Wyo.1995);. *see also Evans v. State,* 892 P.2d 796, 797 (Wyo.1995).

## CONCLUSION

In order to afford Appellant the opportunity to challenge the amount of credit which he was awarded, the district court's order which denied his motion to correct his sentences is reversed, and the case is remanded.