# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 30

OCTOBER TERM, A.D. 2016

March 9, 2017

DHARMINDER VIR SEN,

Appellant
(Defendant),

v.

S-15-0267

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

**Representing Appellant:**

Thomas Fleener, Faculty Director, and Hannah Toland, Student Intern, U.W. Defender Aid Program. Argument by Ms. Toland.

**Representing Appellee:**

Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General. Argument by Ms. Martens.

**Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.**

**BURKE, C.J., delivers the opinion of the Court; KAUTZ, J., files a specially concurring opinion.**

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Appellant, Dharminder Sen, was convicted of first-degree felony murder, aggravated burglary, and conspiracy to commit aggravated burglary for his participation in the killing of Robert Ernst after breaking into Mr. Ernst's home with Wyatt Bear Cloud and Dennis Poitra, Jr.  Sen appealed and, following the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) and our decision in *Bear Cloud v. State*, 2013 WY 18, 294 P.3d 36 (Wyo. 2013) (*Bear Cloud II*), we vacated his sentences and remanded for resentencing on all counts.  *Sen v. State*, 2013 WY 47, ¶¶ 48-52, 301 P.3d 106, 124-28 (Wyo. 2013).

[¶2]    Sen was resentenced to life imprisonment according to law for the first-degree murder conviction, 20 to 25 years for the conspiracy conviction, and 10 to 25 years for the aggravated burglary conviction.  The court ordered the sentences for first-degree murder and conspiracy to run concurrently, and the sentence for aggravated burglary to run consecutively to them.  Sen contends his aggregate sentence, which will require him to serve at least 35 years before he becomes parole eligible, violates constitutional protections against cruel and unusual punishment.  We affirm.

## ISSUES

[¶3]    Sen presents the following issues:

> I.    Is Sen's aggregate sentence a *de facto* sentence of life without the possibility of parole, and therefore unconstitutional under the 8[th] Amendment of the United States Constitution and in violation of Article 1, Section 14 of the Wyoming Constitution?
>
> II.    Is Sen's aggravated burglary sentence grossly disproportionate and unconstitutional?

## FACTS

[¶4]    In August 2009, when he was fifteen years old, Sen, along with Wyatt Bear Cloud and Dennis Poitra, Jr., burglarized the home of Robert and Linda Ernst.  During the burglary, Sen shot and killed Mr. Ernst.  A more complete recitation of the facts is set forth in *Sen*, ¶ 3, 301 P.3d at 111, and will not be repeated here.

[¶5]    After a jury trial, Sen was found guilty of first-degree felony murder, in violation of Wyo. Stat. Ann. § 6-2-101(a) (LexisNexis 2009), conspiracy to commit aggravated burglary, in violation of Wyo. Stat. Ann. §§ 6-1-303(a) and 6-3-301(a) and (c)(i), and aggravated burglary, in violation of Wyo. Stat. Ann. § 6-3-301(a) and (c)(i).  *Sen*, ¶¶ 4, 8,

301 P.3d at 111-12. Initially, he was sentenced to life imprisonment without the possibility of parole for the first-degree felony murder conviction, 20 to 25 years imprisonment for the aggravated burglary conviction, to be served consecutively to the life sentence, and 20 to 25 years imprisonment for the conspiracy to commit aggravated burglary conviction, to be served consecutively to the other two sentences. *Id.*, ¶ 8, 301 P.3d at 112. Sen appealed his convictions and sentence. While the appeal was pending, the United States Supreme Court issued its decision in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and we issued our decision in *Bear Cloud II*, 294 P.3d 36. In *Miller*, the Supreme Court held that sentencing schemes imposing mandatory life without the possibility of parole for those under the age of eighteen at the time of their crimes violate the Eighth Amendment's prohibition against cruel and unusual punishment.

[¶6]    In *Bear Cloud II*, we held that, under Wyoming law, a sentence of "life according to law" is in effect a life sentence without the possibility of parole, and that such a sentence violates the Eighth Amendment when it is imposed on a juvenile without the benefit of an individualized sentencing hearing. *Id.*, ¶¶ 34, 42, 294 P.3d at 45, 47. We also stated that "because the current statutory scheme provides no other method by which to determine parole eligibility, we hold that when a trial court imposes a sentence of life imprisonment according to law upon a juvenile homicide offender, the trial court must also pronounce a specific period of time which must pass before the juvenile becomes parole eligible." *Id.*, ¶ 47, 294 P.3d at 47-48. We vacated Sen's sentences and remanded for resentencing on all counts. We instructed the district court to conduct a hearing consistent with the requirements of *Miller* and to consider the sentences for all counts together "because Sen's sentence of life without the possibility of parole may have impacted the sentencing decisions with respect to his conspiracy and aggravated burglary convictions, which resulted in an additional 40 to 50 years imprisonment beyond his life term." *Sen*, ¶ 51, 301 P.3d at 127.

[¶7]    In accord with our decision, the district court held another sentencing hearing. During that hearing, the court heard testimony from Sen's mother, grandmother, aunt, and several expert witnesses who evaluated Sen. At the conclusion of the hearing, the district court, applying *Miller*, announced: "[T]he Court finds that life without the possibility of parole, . . . is not an appropriate sentence in this matter and the Court must sentence him in the manner in which he has a possibility of parole." The court sentenced Sen to life imprisonment according to law for the first-degree murder conviction and ordered that Sen would become parole eligible under that sentence after 35 years. Sen was also sentenced to 20 to 25 years for conspiracy to commit aggravated burglary, to run concurrently with the life sentence, and to 20 to 25 years for aggravated burglary, to run consecutively to the first two sentences. The aggregate sentence required Sen to serve at least 55 years in prison before becoming parole eligible.

[¶8]    Sen appealed a second time. Before the appeal could be decided, however, we

issued our decisions in *Bear Cloud v. State*, 2014 WY 113, 334 P.3d 132 (Wyo. 2014) (*Bear Cloud III*) and *State v. Mares*, 2014 WY 126, ¶ 25, 335 P.3d 487, 497-98 (Wyo. 2014). In *Bear Cloud III*, we held that an aggregate sentencing scheme imposing a 45-year period of parole ineligibility constituted a *de facto* life sentence with no meaningful opportunity for release. In *State v. Mares*, we addressed the applicability of statutory amendments pertaining to parole eligibility for juveniles convicted of murder to crimes that were committed prior to the statutory change. The amended statutes were enacted in 2013 and provide that persons convicted of first-degree murder who were under 18 at the time of the offense "shall be punished by life imprisonment" and that they shall be eligible for parole after having served 25 years of their sentence. 2013 Wyo. Sess. Laws, ch. 18, § 1 (amending Wyo. Stat. Ann. §§ 6-2-101(b) and 6-10-301(c)).[1] We held that the amended statutes govern parole eligibility for juveniles already serving life sentences when the amendments became effective. We concluded that

> Any juvenile offender sentenced to life imprisonment under the former law is now, by operation of the amended parole statutes, serving a sentence of life imprisonment with eligibility for parole in twenty-five years, and a juvenile offender serving such a sentence is not required to file a Rule 35 motion to implement that revised sentence.

*Mares*, ¶ 26, 335 P.3d at 498. Accordingly, the amended statutes apply to Sen's sentence.

[¶9]    In light of those decisions, the parties filed a stipulated motion seeking a second

---

[1] Wyo. Stat. Ann. § 6-10-301(c) was modified as follows:

> (c) Any sentence other than a sentence specifically designated as a sentence of life imprisonment without parole is subject to commutation by the governor. A person sentenced to life imprisonment for an offense committed after the person reached the age of eighteen (18) years is not eligible for parole unless the governor has commuted the person's sentence to a term of years. A person sentenced to life imprisonment for an offense committed before the person reached the age of eighteen (18) years shall be eligible for parole after commutation of his sentence to a term of years or after having served twenty-five (25) years of incarceration, except that if the person committed any of the acts specified in W.S. 7-13-402(b) after having reached the age of eighteen (18) years the person shall not be eligible for parole.

2013 Wyo. Sess. Laws, ch. 18, § 1, at 76.

remand for resentencing. *Sen v. State*, 2014 WY 148, 337 P.3d 1156 (Wyo. 2014). In support of the motion, the State conceded that Sen's life sentence was subject to the 25-year parole ineligibility requirement in the amended statutes. *Id.*, ¶ 3, 337 P.3d at 1156-57. We granted the motion and remanded for resentencing on all counts for a second time. *Id.*, ¶ 4, 337 P.3d at 1157. In doing so, we noted that in light of the amendments to Wyo. Stat. Ann. §§ 6-2-101(b) and 6-10-301(c), "at the resentencing required by this order, the district court is neither required nor authorized to specify a period of parole ineligibility." *Id.*, ¶ 2, 337 P.3d at 1156.

[¶10] Following another hearing, Sen was resentenced to life imprisonment according to law for first-degree murder; 20 to 25 years for conspiracy to commit aggravated burglary; and 10 to 25 years for aggravated burglary. The court ordered the sentences for first-degree murder and conspiracy to run concurrently to each other, and the sentence for aggravated burglary to run consecutively to them. The aggregate sentence will require Sen to serve at least 35 years in prison, excluding any credit for good time, before he becomes eligible for parole. This appeal followed.

## *DISCUSSION*

### I. *De Facto* Life Without Parole

[¶11] In his first issue, Sen contends his sentence is cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution and Article 1, Section 14 of the Wyoming Constitution.[2] Sen, however, does not present a separate analysis under the Wyoming Constitution. Because he does not provide a reasoned argument under Article 1, Section 14, we do not consider a state constitutional claim. *Bear Cloud III*, ¶ 14, 334 P.3d at 137. Our analysis, therefore, is limited to the Eighth Amendment claim. We review *de novo* the issue of whether a sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Sen*, ¶ 43, 301 P.3d at 122.

[¶12] Sen concedes that he was appropriately sentenced to life imprisonment as a result of his first-degree murder conviction. He claims, however, that because he will not be parole eligible for 35 years, the district court imposed a *de facto* life sentence. According to Sen, his "aggregate sentence is functionally equivalent to an LWOP sentence and, therefore, unconstitutional under *Miller* and *Bear Cloud III*."

---

[2] The Eighth Amendment provides "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Wyoming Constitution, in turn, provides "Excessive bail shall not be required, nor excessive fines imposed, nor shall cruel or unusual punishment be inflicted." Wyo. Const. art. 1, § 14.

[¶13] Our analysis of Sen's claim requires a brief review of the recent precedent applying the Eighth Amendment to juveniles. As set forth in *Bear Cloud III*, the United States Supreme Court, in a series of cases culminating in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. at 2464, established "that children are constitutionally different from adults for purposes of sentencing [b]ecause juveniles have diminished culpability and greater prospects for reform." *Bear Cloud III*, ¶ 15, 334 P.3d at 137. That series began with *Roper v. Simmons*, 543 U.S. 551, 567-68, 125 S.Ct. 1183, 1194, 161 L.Ed.2d 1 (2005), in which the Court found that our society views juveniles as "categorically less culpable than the average criminal" and held that the Eighth Amendment prohibits the death penalty for persons under the age of eighteen at the time of the crime. Subsequently, in *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the Court adopted a categorical rule against life without parole for juvenile non-homicide offenders. In that case, the Court determined that the Eighth Amendment does not require that all juvenile non-homicide offenders be guaranteed eventual freedom, but that the juvenile offenders must have "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 75, 130 S.Ct. at 2030.

[¶14] In *Miller*, the Court addressed the constitutionality of penalty schemes in which juveniles who commit murder face a mandatory sentence of life without the possibility of parole. As we noted in *Bear Cloud III*,

> The *Miller* Court began its analysis with a review of Eighth Amendment jurisprudence, saying that "[t]he Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'" *Id.* at  , 132 S.Ct. at 2463 (quoting *Roper*, 543 U.S. at 560, 125 S.Ct. at 1190). An "excessive sanction" is determined by applying the concept of proportionality — "'punishment for crime should be graduated and proportioned' to both the offender and the offense." *Id.* at  , 132 S.Ct. at 2463 (quoting *Roper*, 543 U.S. at 560, 125 S.Ct. at [1190]). "Proportionality" is a concept that also evolves, with "'the evolving standards of decency that mark the progress of a maturing society.'" *Miller*, 567 U.S. at  , 132 S.Ct. at 2463 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)).

*Id.*, ¶ 25, 334 P.3d at 140. Ultimately, the *Miller* Court held that the mandatory penalty schemes at issue prevented a judge from taking into account the distinctive attributes of youth and their effect on the penological justifications before imposing the harshest sentences on juvenile offenders:

> By removing youth from the balance – by subjecting a juvenile to the same life-without-parole sentence applicable to an adult – these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender. That contravenes *Graham*'s (and also *Roper*'s) foundational principle: that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.

*Miller*, 567 U.S. at ___, 132 S.Ct. at 2466. Accordingly, *Miller* required an individualized sentencing hearing that takes into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.*, 567 U.S. at ___, 132 S.Ct. at 2469.

[¶15] Most recently, in *Montgomery v. Louisiana*, 577 U.S. ___, 136 S.Ct. 718, 725, 193 L.Ed.2d 599 (2016), the Court addressed the issue of whether *Miller* applied retroactively to cases on collateral review. The Court determined that its holding in *Miller* should be given retroactive effect because it announced a substantive rule of constitutional law. *Id.* at ___, 136 S.Ct. at 736. The Court emphasized that *Miller* barred life in prison without the possibility of parole for "all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Id.* at ___, 136 S.Ct. at 734. Further, the Court stated that "*Miller* . . . did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.'" *Id.* The Court concluded that, in light of what it had said in *Roper*, *Graham*, and *Miller* about how children are constitutionally different from adults in their level of culpability, "hope for some years of life outside prison walls must be restored" to those prisoners whose crimes did not reflect irreparable corruption. *Id.* at ___, 136 S.Ct. at 736-37.

[¶16] As indicated above, we first applied the teachings of *Miller* in a series of cases involving Sen's co-defendant, Wyatt Bear Cloud. Bear Cloud was originally sentenced to 20 to 25 years in prison for aggravated burglary; life in prison "according to law" for first-degree murder, to be served consecutively to the aggravated burglary sentence; and 20 to 25 years in prison for conspiracy to commit aggravated burglary, to be served concurrently with the first-degree murder sentence. *Bear Cloud v. State*, 2012 WY 16, ¶ 15, 275 P.3d 377, 384 (Wyo. 2012) (*Bear Cloud I*). We affirmed those convictions and sentences in *Bear Cloud I*. In *Bear Cloud II*, however, following the Supreme Court's decision in *Miller*, we held that Bear Cloud's sentence of "life according to law" was in effect a life sentence without the possibility of parole, and that such a sentence violates the Eighth Amendment when it is imposed on a juvenile without the benefit of an individualized sentencing hearing. *Bear Cloud II*, ¶¶ 34, 42, 294 P.3d at 45, 47. Accordingly, we remanded the case to the district court for a new hearing on Bear

6

Cloud's sentence for his first-degree murder conviction. *Id.*, ¶¶ 42, 49, 294 P.3d at 47, 48. We also held that "[o]nly the life sentence for first-degree murder is at issue in this appeal." *Id.*, ¶ 9, 294 P.3d at 40. As noted above, the Wyoming legislature subsequently amended the laws governing juvenile parole eligibility by providing that persons convicted of first-degree murder who were under 18 at the time of the offense "shall be punished by life imprisonment," and that they shall be eligible for parole after having served 25 years of their sentence. 2013 Wyo. Sess. Laws, ch. 18, § 1 (amending Wyo. Stat. Ann. §§ 6-2-101(b) and 6-10-301(c)).

[¶17] Upon remand, the district court held an individualized sentencing hearing in conformance with the requirements of *Miller*. *Bear Cloud III*, ¶ 9, 334 P.3d at 136. Following the hearing, the court sentenced Bear Cloud to life in prison with the possibility of parole after serving 25 years on the felony murder charge, to run consecutive to the previously imposed sentence of 20 to 25 years for aggravated burglary, and concurrent to the sentence of 20 to 25 years for conspiracy. *Id.*, ¶ 11, 334 P.3d at 136. The effect of this sentencing structure was that the earliest possible meaningful opportunity for Bear Cloud's release would have been in 45 years, when he reached the age of 61. *Id.* In accordance with our decision in *Bear Cloud II*, the district court concluded that Bear Cloud's sentences for aggravated burglary and conspiracy were not before the court. *Id.*, ¶ 10, 334 P.3d at 136. Consequently, the court did not consider the entire sentencing package when it held the resentencing hearing.

[¶18] In *Bear Cloud III*, Bear Cloud challenged the district court's failure to consider his sentences for aggravated burglary and conspiracy at his resentencing hearing. The issue we addressed was whether a juvenile offender sentenced to a lengthy *aggregate* sentence – mandating 45 years of parole ineligibility – is also afforded the protections of the individualized sentencing scheme mandated in *Miller*. *Bear Cloud III*, ¶ 32, 334 P.3d at 141. We answered that question in the affirmative: a "lengthy aggregate sentence for closely-related crimes whose practical effect is that the juvenile offender will spend his lifetime in prison triggers the Eighth Amendment protections set forth by the United States Supreme Court in *Miller*." *Bear Cloud III*, ¶¶ 32-33, 334 P.3d at 141-42. In doing so, we held that an aggregate sentence mandating 45 years of parole ineligibility constitutes a *de facto* life sentence. *Id.*[3] We stated that "On remand, the district court

---

[3] The State asks us to overrule our conclusion, in *Bear Cloud III,* that *Miller* applies to lengthy aggregate sentences. We decline to do so. In *Bear Cloud III*, ¶¶ 35-36, 334 P.3d at 142-44, we recognized a split of authority on the question and determined that those decisions finding *Miller* applicable to aggregate sentences were better reasoned. The State has not presented any authority which causes us to revisit that decision. We note that several of the cases cited by the State in support of its position that *Miller* does not apply to aggregate sentences involved *habeas corpus* proceedings. In those cases, the standard for determining error is whether the state court's adjudication of the defendant's Eighth Amendment claim is "contrary to, or involved an unreasonable application of, clearly established Federal law." *See, e.g.,*

should weigh the entire sentencing package, and in doing so it must consider the practical result of lengthy consecutive sentences." *Id.*, ¶ 36, 334 P.3d at 143 (footnote omitted).

[¶19]  With this precedent in mind, we turn to our analysis of Sen's claim.  Unlike Bear Cloud, Sen does not claim he did not receive an individualized sentencing hearing in compliance with the requirements of *Miller* and *Bear Cloud III*.  Rather, he contends his sentence is unconstitutional because it is "functionally equivalent" to a sentence of life without the possibility of parole.  We disagree.

[¶20]  Sen claims, broadly, that any aggregate sentencing structure imposed on a juvenile offender which results in a period of parole ineligibility beyond 25 years is unconstitutional.  Sen relies upon the statutory amendments providing for parole eligibility for juveniles to support that contention.  His reliance is misplaced.

[¶21]  There is no indication that our legislature intended for the 25-year period of parole ineligibility set forth in Wyo. Stat. Ann. § 6-10-301(c) to apply to aggregate sentences imposed for multiple crimes.  The statute provides "A person sentenced to life imprisonment for ***an offense*** committed before the person reached the age of eighteen (18) years shall be eligible for parole after commutation of his sentence to a term of years or after having served twenty-five (25) years of incarceration . . . ."  (Emphasis added.) In *Bear Cloud III*, we determined that the aggregate sentence resulting in parole ineligibility for 45 years was a *de facto* life sentence and unconstitutional.  However, we did not indicate that any aggregate sentence exceeding 25 years of parole ineligibility was unconstitutional.  Rather, we implicitly acknowledged the sentencing court's authority to impose consecutive sentences upon a juvenile convicted of first-degree murder.  We remanded to the district court to consider "the practical result of lengthy consecutive sentences." *Bear Cloud III*, ¶ 36, 334 P.3d at 143.  Sen has not provided any precedent from any jurisdiction supporting his contention, and we have found none.  Accordingly, we reject his claim that any sentence resulting in parole ineligibility in excess of 25 years is unconstitutional.

[¶22]  Sen also claims that his aggregate sentence, resulting in 35 years of parole ineligibility, is unconstitutional because, according to Sen, it is "functionally equivalent" to a life without parole sentence.  With respect to this claim, Sen has again failed to provide us with any precedent from any jurisdiction supporting his assertion.[4]  As we

---

*Bunch v. Smith*, 685 F.3d 546, 549 (6th Cir. 2012); *Moore v. Biter*, 742 F.3d 917 (9th Cir. 2014).  That, however, is not the appropriate standard for this Court to use in a direct appeal of a sentencing determination.

[4] Indeed, Sen has cited no decision other than *Bear Cloud III* in which a court has determined that a sentence carrying less than 45 years of parole ineligibility constitutes a *de facto* life sentence or fails to

noted in *Bear Cloud III*, ¶ 35 n.10, 334 P.3d at 143 n.10, however, at least one other court has found that a 35-year period of parole ineligibility does provide a meaningful opportunity for release. *State v. Sanders*, No. 2012AP1517, 2014 WI App 97, 356 Wis. 2d 829, 855 N.W.2d 720, 2014 Wisc. App. LEXIS 646, ¶¶ 14-15, 2014 WL 3819456, ¶¶ 14-15 (Wis. Ct. App. August 5, 2014) (unpublished disposition). Sen also relies upon the same life expectancy data that we rejected in *Bear Cloud III* to support his claim that his aggregate sentence fails to provide him any meaningful opportunity for release.[5] As in *Bear Cloud III*, we decline to make any projections of Sen's life expectancy.

[¶23] The issue of how long a juvenile may be sentenced to prison before he becomes parole eligible has been the subject of considerable judicial attention in the wake of *Graham* and *Miller*. Some jurisdictions have chosen to treat the juvenile's life expectancy as a key factual issue to be determined by the sentencing court. In these jurisdictions, however, it is unclear how much life expectancy must remain at the time of parole eligibility in order to constitute a "meaningful opportunity for release."

> "[L]ife expectancy projections derived on appeal [have varied] widely in recent juvenile LWOP cases," from as high as 80 years for an 18-year-old defendant to as low as 64.6 years for a 17-year-old defendant. (*People v. Gonzalez* (2014) 225 Cal.App.4th 1296, 1307 [170 Cal. Rptr. 3d 883], review granted July 23, 2014, S219167; *see People v. Mendez* (2010) 188 Cal.App.4th 47, 63 [114 Cal. Rptr. 3d 870] [life expectancy for an 18-year-old male is 76 years, citing National Center for Health Statistics, Centers for Disease Control, National Vital Statistics Reps. (June 28, 2010) table 2, vol. 58, No. 21 and *People v. Romero* (2002) 99 Cal.App.4th 1418, 1427–1428 [122 Cal. Rptr. 2d 399]]; *People v. Solis, supra*, 224 Cal.App.4th at p. 734, fn. 2 [life expectancy for a 17 year old is 72 years based on actuarial tables].)

---

provide a meaningful opportunity for release. The State contends we should overrule *Bear Cloud III* and hold that a 45-year period of parole ineligibility does not constitute a *de facto* life sentence. We decline to do so, and note that it is not necessary to address the State's claim in order to resolve the issues presented in this appeal.

[5] While we stated that the study "seems to demonstrate that the life expectancy of incarcerated youthful offenders is significantly reduced compared to that of the general population," we note that the data collected was based on juveniles sentenced to natural life sentences, which provide no opportunity for release, rather than lengthy term-of-years sentences. *Bear Cloud III*, ¶ 33, 334 P.3d at 142; http://fairsentencingofyouth.org/wp-content/uploads/2010/02/Michigan-Life-Expectancy-Data-Youth-Serving-Life.pdf.

*People v. Turner*, 200 Cal. Rptr. 3d 739, 754 (Cal. App. 1st 2016). In *People v. Caballero*, 55 Cal. 4th 262, 145 Cal. Rptr. 3d 286, 282 P.3d 291, 294 n.3 (2012), which held that *Miller* and *Graham* apply to lengthy or aggregate sentences, the California Supreme Court determined that "life expectancy" means the normal life expectancy of a healthy person of the defendant's age and gender living in the United States. In contrast, other courts have recognized the argument that long-term incarceration presents health and safety risks that tend to decrease life expectancy as compared to the general population. *See, e.g.*, *People v. J.I.A.*, No. G040625, 2013 Cal. App. Unpub. LEXIS 706, at *15-18, 2013 WL 342653, at *5 (Cal. Ct. App. Jan. 30, 2013) (unpublished opinion); *People v. Lucero*, ___ P.3d ___ , ___ , 2013 Colo. App. LEXIS 510, at *10, 2013 WL 1459477, at *4 (Colo. App. 2013).

[¶24] Other authority, however, rejects specific projections of the defendant's life expectancy as a factor to be used in reviewing a juvenile's sentence. As we noted in *Bear Cloud III*, ¶ 33, 334 P.3d at 142, the Iowa Supreme Court, in *State v. Null*, 836 N.W.2d 41, 71 (Iowa 2013) concluded that it does "not believe the determination of whether the principles of *Miller* or *Graham* apply in a given case should turn on the niceties of epidemiology, genetic analysis, or actuarial sciences in determining precise mortality dates." We agreed with *Null* in *Bear Cloud III*, and we declined to make any projections of Bear Cloud's life expectancy based on the data he presented to the district court. There is no reason for us to depart from that determination in this case.

[¶25] Sen will be eligible for parole when he is approximately 50 years old. He has failed to establish that this sentence does not provide him a meaningful opportunity for release. It is not a *de facto* life sentence and does not violate the Eighth Amendment.

## II. Proportionality

[¶26] In his second issue, Sen contends his sentence of 10 to 25 years for aggravated burglary, viewed in isolation, violates the Eighth Amendment and Article 1, Section 14 of the Wyoming Constitution. Again, however, he does not present an independent analysis under the Wyoming Constitution. As a result, our analysis is limited to his Eighth Amendment claim. We apply a *de novo* review to Sen's constitutional challenge. *Sen*, ¶ 43, 301 P.3d at 122.

[¶27] Sen claims his sentence for aggravated burglary is grossly disproportionate to his crime. He characterizes his crime as "car-hopping," and asserts there is substantial disparity between his sentence and sentences for similar crimes in Wyoming. He also suggests the district court should not have considered the fact that he subsequently used the gun obtained in the burglary to shoot and kill his victim. Further, he contends the district court did not consider his age when sentencing him for aggravated burglary, as required under *Miller*.

10

[¶28]  In Wyoming, aggravated burglary is a felony punishable by not less than 5 nor more than 25 years in prison.  Wyo. Stat. Ann. § 6-3-301(c).  Sen does not suggest an appropriate length for his aggravated burglary sentence.  Rather, echoing the argument in his first issue, he suggests that any sentence for aggravated burglary should have been ordered to run concurrently to his life sentence for first-degree murder.  We do not agree.

[¶29]  We have repeatedly stated that "A court is given broad discretion in sentencing and may consider a wide variety of factors about the defendant and his crimes." *Frederick v. State*, 2007 WY 27, ¶ 26, 151 P.3d 1136, 1144 (Wyo. 2007) (citing *Manes v. State*, 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo. 2004)).  In *Noel v. State*, 2014 WY 30, ¶ 42, 319 P.3d 134, 148 (Wyo. 2014), we noted that "a sentencing court may consider evidence that supports a charge greater than the conviction for which the defendant is being sentenced as well as evidence of other crimes committed by the defendant." Further, in *Frederick*, ¶ 26, 151 P.3d at 1145, we stated that "Victim impact information about other crimes or convictions unrelated to the particular crime for which sentence is about to be imposed is permissible."  Accordingly, the district court could properly consider Sen's conduct before and after the aggravated burglary in fashioning an appropriate sentence.

[¶30]  Sen points to several cases from Wyoming and elsewhere to support his claim that his sentence for aggravated burglary is disproportionate to the crime.  He relies on *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637 (1983), which held that

> a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

Since *Solem*, however, we have held that a comparison to sentences in other cases is appropriate only in exceptional circumstances.  In *Oakley v. State*, 715 P.2d 1374, 1379 (Wyo. 1986), we stated that

> We will not engage in a lengthy analysis under all three of the *Solem* criteria, including a consideration of the sentences imposed on similarly situated defendants in this and other jurisdictions, except in cases where the mode of punishment is unusual or where the relative length of sentence to imprisonment is extreme when compared to the gravity of the offense (the first of the *Solem* criteria).

Similarly, in *Dodge v. State*, 951 P.2d 383, 385 (Wyo. 1997), we stated that

> [T]his court has adhered to the rule that we will not undertake a lengthy analysis under all three of the *Solem* criteria "except in cases where the mode of punishment is unusual or where the relative length of sentence to imprisonment is extreme when compared to the gravity of the offense." . . . Our rule is in accord with the approach taken by the United States Supreme Court in *Harmelin v. Michigan*, where the court concluded that the *Solem* proportionality analysis is appropriate only "in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." [*Harmelin*,] 501 U.S. 957, 1005, 111 S.Ct. 2680, 2707, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring).

*See also Sampsell v. State*, 2001 WY 12, ¶ 10, 17 P.3d 724, 728 (Wyo. 2001); *Suval v. State*, 6 P.3d 1272, 1274 (Wyo. 2000).

[¶31]  Sen claims we should compare his sentence to Bear Cloud's, asserting that Bear Cloud's case provides an "exact factual scenario available for analysis."[6]  The record is clear, however, that Bear Cloud's case does not provide an exact factual scenario for comparison.  Sen had a more extensive juvenile history than Bear Cloud.  Sen also had a number of infractions during his incarceration that distinguish him from Bear Cloud.  Most significantly, Sen used the gun acquired during the burglary to shoot and kill Mr. Ernst.  The court properly considered these factors in fashioning an appropriate sentence.

[¶32]  This is not the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.  This is not, as Sen would suggest, simply a "car-hopping" case.  There is no question that Sen stole the gun.  He practiced with it.  He then broke into a house in the middle of the night and used that gun to shoot and kill Mr. Ernst in his bed, in front of his wife.  The sentence is within the range of 5 to 25 years specified in Wyo. Stat. Ann. § 6-3-301(c).[7]  We are unable to

---

[6] Sen requests that we take judicial notice of the fact that, upon remand in *Bear Cloud III*, Bear Cloud's sentences have been ordered to be served concurrently, resulting in a 25-year period of parole ineligibility.  We take notice of this fact only for purposes of our discussion in this case.

[7] "[W]e do not set aside a sentence if it is within the legislatively mandated minimum and maximum terms in the absence of a clear abuse of discretion."  *Kenyon v. State*, 2004 WY 100, ¶ 11, 96 P.3d 1016,

conclude the sentence of 10 to 25 years is extreme under these circumstances. Accordingly, we need not consider the sentences imposed on other criminals in this or other jurisdictions.

[¶33] Finally, we find no merit in the claim that the district court did not consider Sen's status as a juvenile in determining an appropriate sentence. The district court evaluated evidence relating to Sen's criminal history as a juvenile, his family and home environment, his mental and emotional development, and his potential for rehabilitation. This evidence included four psychological evaluations, as well as testimony from his family members and several expert witnesses. After considering that evidence, the court concluded that a life sentence without the possibility of parole was "inappropriate." There is no indication in the record that the district court did not consider the evidence relating to Sen's youth in issuing the sentence for aggravated burglary or in imposing the entire sentencing package.

[¶34] Ultimately, the district court had broad discretion to sentence within the minimum and maximum sentence mandated. *Kenyon*, ¶ 12, 96 P.3d at 1022. The record reveals the sentencing court took account of Sen's age in deciding to impose the 10- to 25-year sentence and set forth detailed reasons for its decision, none of which were arbitrary or unreasonable. We find no Eighth Amendment violation with respect to the aggravated burglary sentence.

[¶35] Affirmed.

---

1021 (Wyo. 2004) (quoting *Young v. State*, 904 P.2d 359, 362 (Wyo. 1995)).

**KAUTZ, Justice, specially concurring.**

[¶36]  While I agree that Mr. Sen's sentence is constitutional, I have concerns with the Court's holding in *Bear Cloud v. State*, 2014 WY 113, ¶ 38, 334 P.3d 132, 145 (Wyo. 2014) (*Bear Cloud III*) and would revisit that decision.  Contrary to the position of the majority, I agree with the State that *Bear Cloud III* goes too far.  I do not find the constitutional principles from *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) and *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) apply to aggregate sentences for multiple convictions including a murder.  In that circumstance it is not necessary or appropriate for this Court to determine whether the aggregate sentence constitutes a "*de facto* life sentence."  Further, even if this court attempts to define a "*de facto*" life sentence, I disagree with the analysis and the specific conclusion in *Bear Cloud III*.  Continued reliance on *Bear Cloud III* as the framework for analyzing this case perpetuates the problems with that decision.

[¶37]  Although I would revisit *Bear Cloud III* and do not believe it should be necessary to decide whether Mr. Sen's sentence was *de facto* life without parole, I concur with the majority's rejection of Mr. Sen's argument that any sentence that requires that he serve more than twenty-five years before becoming parole eligible is the functional equivalent of a life sentence.  While Wyo. Stat. Ann. § 6-10-301(c) (LexisNexis 2015) mandates that a juvenile offender become parole eligible after twenty-five years into serving a life sentence for first-degree murder, that statute does not prohibit the courts from sentencing juveniles to aggregate sentences for multiple crimes that result in parole eligibility more than twenty-five years after the date of sentencing.  I also concur with the majority's conclusion that Mr. Sen's sentence does not constitute a *de facto* life without parole sentence.  Whatever a sentence of *de facto* life without parole might be, the sentences imposed on Mr. Sen most certainly are not that.  Furthermore, his sentences are not grossly disproportionate to the crimes he committed.

14