# IN THE SUPREME COURT, STATE OF WYOMING

## 2019 WY 104

OCTOBER TERM, A.D. 2019

*October 10, 2019*

PHILLIP SAM,

**Appellant**
**(Defendant),**

v.

S-19-0031

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Chief Justice**.

[¶1]    Phillip Sam was convicted of one count of first-degree murder and twelve counts of aggravated assault and battery for crimes he committed when he was sixteen years old. The district court found that Mr. Sam was not a juvenile so irredeemable that he deserved a sentence of life imprisonment without the possibility of parole, and instead sentenced him to an aggregate prison term that left him eligible for parole after fifty-two years. This Court upheld Mr. Sam's conviction, but found his sentence was a de facto life without parole sentence in violation of the Eighth Amendment, and remanded for resentencing. On remand, the district court imposed an aggregate sentence that leaves Mr. Sam eligible for parole after serving thirty-five years. We affirm.

## ISSUES

[¶2]    Mr. Sam presents a single issue that we restate as: Did the district court violate the Eighth Amendment or abuse its discretion in sentencing Mr. Sam to an aggregate sentence that leaves him eligible for parole after serving thirty-five years?[1]

## FACTS

[¶3]    In 2016, Mr. Sam was convicted of one count of first-degree murder and twelve counts of aggravated assault and battery. *Sam v. State*, 2017 WY 98, ¶ 8, 401 P.3d 834, 842 (Wyo. 2017). We described the underlying facts in our decision affirming the conviction:

> Mr. Sam had ongoing conflict with a rival youth group, which escalated on October 4 and into the early hours of October 5, 2014. The afternoon of the 4th, Mr. Sam stole a .40 caliber S&W semi-automatic pistol from his mother's boyfriend. Later, he had several communications with members of the rival group about setting up a fight. He made sure the group was primed to fight when he went out to the mall where they were watching a movie, located one of their cars, and broke its mirror and slashed its tires. Mr. Sam then went to hang out at his friend Timber Strange's house. He took out the

---

[1] The State argues that Mr. Sam waived his arguments on appeal because he argued in favor of a sentence that would make him eligible for parole after serving thirty-five years. We view the record differently. Mr. Sam did argue that based on this Court's precedent, the district court could not impose an aggregate sentence that required that he serve greater than thirty-five years before parole eligibility, but he did not request such a sentence. He requested either a total term of twenty-five to thirty-five years for all the counts on which he was convicted, or alternatively life with parole after twenty-five years for the murder count and concurrent sentences for the twelve aggravated assault and battery counts. In other words, the sentence he requested was that he be eligible for parole after serving twenty-five years. We therefore find no waiver.

gun to show his friends and "said that he was going to kill someone that night."

When the car's owner discovered the damage, one of the rival group, Damian Brennand, immediately called Mr. Sam, believing he was "the only known person who would have done it," and "told him ... he needed his ass beat," and that he was going to bring a gun to the park to shoot Mr. Sam. Later, one member of the group called Mr. Sam back to say they "couldn't get their hands on a gun. They couldn't find one," but they wanted to meet him and fight. Mr. Sam changed the location of the encounter to Martin Luther King Park and went there with five friends. Mr. Sam took the pistol, and he and Timber Strange sat in a pavilion for about 15 minutes. Mr. Strange testified:

> I had asked him if this was actually what he wanted to do, if he actually wanted to do this.
>
> Q. [Prosecutor] And by this, what did you mean?
>
> A. As in hurt people and potentially kill somebody.
>
> Q. And what did he say?
>
> A. He had said, yeah, that he had felt that he needed to do it.

When one of their friends called to tell them the rival group was approaching, Mr. Sam and Mr. Strange, who had bandanas on their faces, moved to stand between some trees. As the group of 12 youths approached, the two stepped out from the trees and Mr. Sam shot repeatedly. One bullet grazed Damian Brennand's arm, and another struck Tyler Burns in the chest. Mr. Burns fell to the ground. Mr. Sam approached Mr. Burns, who said "no" three or four times, and Mr. Sam shot him through his hand and head. Mr. Burns died as a result. The other 10 members of the rival group were not injured. Mr. Sam was 16 years old.

*Sam*, ¶¶ 4-6, 401 P.3d at 841-42.

[¶4]    Before Mr. Sam's original sentencing, the district court held an evidentiary hearing to determine whether he was one of the rare juveniles who is irredeemable and should be

sentenced to life without the possibility of parole.[2]  *Sam*, ¶ 79, 401 P.3d at 859.  The court found that he was not and that he should be eligible for parole at some point in his life.  *Id.* Based on that determination, the court sentenced him as follows:

> Mr. Sam was sentenced to life for the first-degree murder charge. He could be eligible for parole after 25 years on that sentence because he was under 18 at the time of the crime. Wyo. Stat. Ann. § 6-10-301(c) (LexisNexis 2017). He was sentenced to 9 to 10 years on each of the aggravated assault charges, which the district court bunched into three concurrent terms to be served consecutively—the sentence is life + 9-10 x 3, or, without counting good time, parole eligibility for Mr. Sam in 52 years (25 + 27), when he would be 70 years old.

*Sam*, ¶ 9, 401 P.3d at 842.

[¶5]   Mr. Sam appealed his conviction and sentence to this Court.  We upheld his conviction but reversed his sentence and remanded for resentencing.

> In *Bear Cloud III*, we analyzed the United States Supreme Court case law leading up to *Miller* and concluded that the prohibition of life without parole sentences required a "'meaningful opportunity to obtain release based on

---

[2] Such a hearing is required before sentencing a juvenile to life without the possibility of parole.  *Miller v. Alabama*, 567 U.S. 460, 479-80, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012).  We have explained:

> The State correctly points out that there is not a categorical rule against life without parole sentences for juvenile homicide offenders. *Miller* "did bar life without parole, however, for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Montgomery v. Louisiana*, ⸺ U.S. ⸺, 136 S.Ct. 718, 734, 193 L.Ed.2d 599 (2016). The *Miller* Court required sentencing courts to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Miller*, 567 U.S. at 480, 132 S.Ct. at 2469. That requirement has taken the form of a "*Miller* hearing," an individualized sentencing hearing during which the sentencing court obtains information to make the threshold determination whether the offender is one of "[t]hose who commit truly horrifying crimes as juveniles [and] may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives."

*Sam*, ¶ 78, 401 P.3d at 859 (quoting *Graham v. Florida*, 560 U.S. 48, 75, 130 S.Ct. 2011, 2030, 176 L.Ed.2d 825 (2010)); *see also Bear Cloud v. State*, 2013 WY 18, ¶ 42, 294 P.3d 36, 47 (Wyo. 2013) (*Bear Cloud II*) (setting forth non-exhaustive list of factors a sentencing court should consider in making *Miller* determination).

demonstrated maturity and rehabilitation.'" 2014 WY 113, ¶ 21, 334 P.3d at 139 (quoting *Graham*, 560 U.S. at 75, 130 S.Ct. at 2030). And we held that "'[t]he prospect of geriatric release . . . does not provide a meaningful opportunity to demonstrate the maturity and rehabilitation required to obtain release and reenter society as required by *Graham*. . . .'" *Bear Cloud III*, 2014 WY 113, ¶ 34, 334 P.3d at 142 (quoting *State v. Null*, 836 N.W.2d 41, 71 (Iowa 2013) (internal quotation marks omitted)). Since then, the United States Supreme Court has confirmed that the release for juveniles contemplated by the *Roper*, *Graham*, and *Miller* courts should allow them "hope for some years of life outside prison walls. . . ." *Montgomery*, 136 S.Ct. at 736-37. We held in Mr. Bear Cloud's case that his sentence of a minimum of 45 years, with possible release when he is 61, was the functional equivalent of life without parole. *Bear Cloud III*, 2014 WY 113, ¶¶ 11, 33, 334 P.3d at 136, 142. In this case, the sentencing court has made the determination that Mr. Sam is not one of the juvenile offenders whose crime reflects irreparable corruption. An aggregated minimum sentence exceeding the 45/61 standard is the functional equivalent of life without parole and violates *Bear Cloud III* and *Miller* and its progeny. The sentence imposed on Mr. Sam of a minimum 52 years with possible release at age 70 clearly exceeds that. We therefore reverse and remand with instructions to the sentencing court to sentence Mr. Sam within the confines set forth in *Bear Cloud III*.

*Sam*, ¶ 80, 401 P.3d at 860.

[¶6]   On remand, the district court ruled that it would not revisit its prior determination that Mr. Sam was not one of the rare juveniles for whom a sentence of life without the possibility of parole was appropriate.  The court also limited the evidence on resentencing to that which was available at the time of initial sentencing.  At the resentencing hearing, the court heard from two of the aggravated assault victims and from members of the murder victim's family.  Mr. Sam presented the testimony of a child psychologist who had worked with him before he committed the crimes in this case, and his mother also addressed the court.  Before announcing Mr. Sam's sentence, the court noted its need to tailor the sentencing ranges to comply with Eighth Amendment precedent, and it also stated:

There has been so much said and so little today, I guess, relatively speaking compared to when we were here before.  I want to re-emphasize the Court has heard and considered the entire file, the sentencing hearing, and even reviewed the

transfer hearing so that had anybody taken me up on my offer
to make an argument or to point any particular thing out they
could do so. No one did, but I considered it all anyway and the
record should reflect that.

[¶7]    The court then sentenced Mr. Sam to the statutorily required life with the possibility
of parole in twenty-five years for the first-degree murder count. *See* Wyo. Stat. Ann. § 6-
10-301(c). The court also sentenced him to five to ten years for each of the twelve counts
of aggravated assault and battery and grouped those into two groups, with each count
within a group to be served concurrently. The court ordered the life sentence to be served
first and each grouping of the aggravated assault and battery sentences to be served
consecutive to the life sentence and to each other. This means Mr. Sam will be eligible for
parole after serving thirty-five years of his sentence, when he will be fifty-one years old.[3]

[¶8]    Mr. Sam filed a timely notice of appeal to this Court.

## STANDARD OF REVIEW

[¶9]    The question of whether Mr. Sam's sentence violates the Eighth Amendment is a
question of law that we review de novo. *Sam*, ¶ 76, 401 P.3d at 859 (citing *Bear Cloud v.
State*, 2014 WY 113, ¶ 13, 334 P.3d 132, 137 (Wyo. 2014) (*Bear Cloud III*)); *see also
Davis v. State*, 2018 WY 40, ¶ 62, 415 P.3d 666, 685 (Wyo. 2018) ("We review the legality
of a sentence de novo, and we consider a sentence to be illegal when it violates the
constitution or other laws."). Our review of a district court's sentencing decision is
otherwise for an abuse of discretion. *Davis*, ¶ 63, 415 P.3d at 686 (quoting *Schaeffer v.
State*, 2012 WY 9, ¶ 51, 268 P.3d 1045, 1061 (Wyo. 2012)) ("'[w]hen imposing sentence,
the trial court is given broad discretion to consider a wide variety of factors about the
defendant and his crimes,' and we 'will not disturb a sentencing decision absent a clear
abuse of discretion'"). "An abuse of discretion will not be found unless the court acts in a
manner that exceeds the bounds of reason." *Sparks v. State*, 2019 WY 50, ¶ 12, 440 P.3d
1095, 1101 (Wyo. 2019).

## DISCUSSION

[¶10]  We have recognized that a "lengthy aggregate sentence for closely-related crimes
whose practical effect is that the juvenile offender will spend his lifetime in prison triggers
the Eighth Amendment protections set forth by the United States Supreme Court in *Miller*."
*Sen v. State*, 2017 WY 30, ¶ 18, 390 P.3d 769, 775 (Wyo. 2017) (*Sen III*) (quoting *Bear
Cloud III*, ¶¶ 32-33, 334 P.3d at 141-42). We have in two prior cases considered whether
an aggregate sentence amounts to a de facto life sentence without the possibility of parole.

---

[3] Mr. Sam was sixteen years old when he was arrested for these crimes and has remained in custody since
that time.

In *Bear Cloud III*, we held that an aggregate sentence that required the juvenile to serve forty-five years before he would be eligible for parole was a de facto life sentence that triggered the *Miller* protections. *Bear Cloud III*, ¶¶ 11, 33, 334 P.3d at 136, 142. We reached the opposite conclusion in *Sen III* where we held that an aggregate sentence that required the defendant to serve thirty-five years before he would be eligible for parole did not trigger the *Miller* protections. *Sen III*, ¶¶ 19, 22, 390 P.3d at 775-76.

[¶11] Mr. Sam's new sentence leaves him eligible for parole after he has served thirty-five years. In framing his issue on appeal, he suggests that this is a de facto life sentence, but he argues his claim differently. He acknowledges our holding in *Sen III* that thirty-five years is not a de facto life sentence and then contends (citations omitted):

> The sentence in the instant case is too conveniently similar to [*Sen III*] to be coincidental. Absent any articulation or explanation, it seems likely that the trial court tailored its sentence to the highest sentence that has been upheld to date in Wyoming. That procedure ignores the requirements that the district court must also be mindful of the rule set forth by the United States Supreme Court that "the punishment should fit the offender and not merely the crime."

[¶12] We find no support for this argument in the record. At the resentencing hearing, the district court heard the testimony of one of Mr. Sam's treating psychologists, and it heard from Mr. Sam's mother. Additionally, the court stated that it had considered the entire record, including the record from Mr. Sam's motion to have his case transferred to juvenile court, which included evidence on:

> (i) The seriousness of the alleged offense to the community . . . ;
>
> (ii) Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
>
> (iii) Whether the alleged offense was against persons or against property . . . ;
>
> * * * *
>
> (v) The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living;

6

(vi) The record and previous history of the juvenile, including previous contacts with the law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this court, or prior commitments to juvenile institutions;

(vii) The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile . . . .

*Sam*, ¶ 10, 401 P.3d at 842-43 (quoting Wyo. Stat. Ann. § 14-6-237(b) (LexisNexis 2017)).

[¶13]  "We have repeatedly stated that '[a] court is given broad discretion in sentencing and may consider a wide variety of factors about the defendant and his crimes.'" *Sen III*, ¶ 29, 390 P.3d at 777 (quoting *Frederick v. State*, 2007 WY 27, ¶ 26, 151 P.3d 1136, 1144 (Wyo. 2007)).  The record shows that the district court did not arbitrarily craft Mr. Sam's sentence and instead considered the multiple crimes, the impact on the victims and their families, Mr. Sam's behavior in committing the crimes, his juvenile history, and his prospects for rehabilitation.  These were all proper considerations, and Mr. Sam has thus failed to show a constitutional violation or an abuse of discretion in the district court's sentencing decision.[4]

[¶14]  Affirmed.

---

[4] To the extent Mr. Sam may be suggesting that the district court should have held a *Miller* hearing, we disagree.  A *Miller* hearing is required only to determine whether a juvenile should be sentenced to life without parole.  *Bear Cloud III*, ¶ 42, 334 P.3d at 145 ("The holding in *Miller* is restricted to the need to weigh the mitigating factors of youth in imposing the 'particular penalty' of life without parole.").  By the time of resentencing, the district court had already ruled that Mr. Sam would not receive an aggregate sentence to life without the possibility of parole, and there was therefore no need for the court to revisit the *Miller* factors.