# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 122

APRIL TERM, A.D. 2020

*September 18, 2020*

DONALD CLYDE DAVIS,

Appellant
(Defendant),

v.

S-20-0020

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Johnson County*
*The Honorable William J. Edelman, Judge*

*Representing Appellant:*

Office of the Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Lauren McLane, Director, Defender Aid Program; Emily Williams, Student Director.

*Representing Appellee:*

Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Donald Clyde Davis challenges his sentence following reversal and remand in *Davis v. State*, 2018 WY 40, 415 P.3d 666 (Wyo. 2018) (*Davis I*).  On remand, the district court concluded Mr. Davis was not one of those rare juvenile offenders who may be constitutionally sentenced to the functional equivalent of life without parole (i.e., a de facto life sentence) because his crimes "reflect[] irreparable corruption resulting in permanent incorrigibility, rather than transient immaturity."  *Id.* ¶ 54, 415 P.3d at 684.  It imposed a new aggregate sentence of 12 to 50 years for aggravated robbery, to be served "consecutive[] to the sentence previously imposed and subsequently served for the offense of first-degree murder."  Mr. Davis contends this sentence is an unconstitutional de facto life sentence.  He also contends the court abused its discretion when it sentenced him to 12 to 50 years for aggravated robbery.  We affirm.

## *ISSUES*

[¶2]    Mr. Davis raises four issues.  The first two, which we restate, are dispositive.[1]

> I. Did the court impose a de facto life sentence, in violation of
> the Eighth Amendment to the United States Constitution?
>
> II. Did the court abuse its discretion when it sentenced Mr.
> Davis to 12 to 50 years for aggravated robbery?

## *BACKGROUND*

[¶3]    In 1982, when Mr. Davis was 17 years old, he and a friend picked up, robbed, and murdered a hitchhiker.[2] *Davis I*, ¶ 1, 415 P.3d at 671.  "Mr. Davis pled guilty to first degree murder, felony murder, and aggravated robbery."  *Id.*  On February 22, 1983, the court sentenced him to life without parole for murder plus 20 to 50 years for aggravated robbery.[3] *Id.* ¶¶ 1, 6, 415 P.3d at 671, 673.

[¶4]    Mr. Davis began challenging his sentence some 30 years later, as the legal landscape for sentencing juvenile offenders convicted of murder changed.  *See id.* ¶ 15, 415 P.3d at 674.  He initially filed a motion to correct an illegal sentence in June 2013.  *Id.*  His motion asked the district court to vacate his sentence and conduct a new sentencing hearing

---

[1] Because we conclude that Mr. Davis' aggregate sentence is not a de facto life sentence, we do not need to address his alternative argument that we should allow his de facto life sentence "to stand, but find that under *Montgomery v. Alabama* and equal protection [he] is parole eligible now."

[2] The facts are set forth in detail in *Davis I*, ¶¶ 3–5, 415 P.3d at 672–73.

[3] More specifically, in accordance with the plea agreement, the court sentenced Mr. Davis to life without parole for first degree murder, noting that his sentences for first degree murder and felony murder would merge, and it imposed a consecutive sentence of 20 to 50 years for aggravated robbery.

1

pursuant to *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and *Bear Cloud v. State*, 2013 WY 18, 294 P.3d 36 (Wyo. 2013) (*Bear Cloud II*). *See id.* Before the court ruled on his motion, his life sentence was converted to life with the possibility of parole after 25 years by operation of amendments to Wyo. Stat. Ann. § 6-10-301(c).[4]  *Id.*  More than two years later, on December 15, 2015, the Wyoming Board of Parole (Board) paroled Mr. Davis from his life sentence to begin serving his 20- to 50-year sentence for aggravated robbery.[5]  *Id.*

[¶5]    In 2016, Mr. Davis supplemented his motion to correct an illegal sentence.  *Id.* ¶ 16, 415 P.3d at 674.  His supplemented motion asked the court to vacate his sentence and provide him a new sentencing hearing consistent with *Miller* and *Bear Cloud v. State*, 2014 WY 113, 334 P.3d 132 (Wyo. 2014) (*Bear Cloud III*) on grounds that his new aggregate sentence—life lasting a minimum of 25 years plus 20 to 50 years—remained a de facto life sentence.  *Id.*  The court held a new sentencing hearing and imposed the original sentence. *Id.*  Mr. Davis appealed, raising numerous sentencing issues.  *Id.* ¶¶ 2, 22, 415 P.3d at 671–72, 676.

[¶6]    In *Davis I*, we determined the court had not properly considered and weighed the *Miller* factors and had sentenced Mr. Davis to the functional equivalent of life without parole without making a permanent incorrigibility finding.  *Id.* ¶¶ 26, 106, 415 P.3d at 676, 695–96.  Accordingly, his sentence violated the Eighth Amendment.  *Id.* ¶ 106, 415 P.3d at 696.  We reversed and remanded for a new sentencing hearing and resentencing.  *Id.* ¶ 107, 415 P.3d at 696.  We instructed the court on remand to "approach the case with the understanding that, more likely than not, life without parole is a disproportionate sentence for Mr. Davis[.]"  *Id.*  We further instructed the court to "consider the *Miller* factors and decide whether he is the truly rare individual mentioned in *Miller* who is incapable of reform."  *Id.*

---

[4] As amended, Wyo. Stat. Ann. § 6-10-301(c) stated:

> Any sentence other than a sentence specifically designated as a sentence of life imprisonment without parole is subject to commutation by the governor.  A person sentenced to life imprisonment for an offense committed after the person reached the age of eighteen (18) years is not eligible for parole unless the governor has commuted the person's sentence to a term of years.  A person sentenced to life imprisonment for an offense committed before the person reached the age of eighteen (18) years shall be eligible for parole after commutation of his sentence to a term of years or after having served twenty-five (25) years of incarceration, except that if the person committed any of the acts specified in W.S. 7-13-402(b) after having reached the age of eighteen (18) years the person shall not be eligible for parole.

*State v. Mares*, 2014 WY 126, ¶ 21, 335 P.3d 487, 496 (Wyo. 2014) (quoting Wyo. Stat. Ann. § 6-10-301(c) (LexisNexis 2013)).

[5] The Board denied Mr. Davis parole in 2013 and 2014 due to the seriousness of his crimes.

[¶7]    The court held a two-day sentencing hearing on remand and concluded Mr. Davis was not one of those truly rare juvenile offenders mentioned in *Miller*.[6] It resentenced him to 12 to 50 years for aggravated robbery, to be served "consecutive[] to the sentence previously imposed and subsequently served" for murder.

## *DISCUSSION*

### I.    *The court did not impose a de facto life sentence.*

[¶8]    Whether Mr. Davis' sentence violates the Eighth Amendment is a question of law we review de novo. *Sam II*, ¶ 9, 450 P.3d at 221 (citations omitted); *see also Davis I*, ¶ 62, 415 P.3d at 685 ("We review the legality of a sentence de novo, and we consider a sentence to be illegal when it violates the constitution or other laws.").

[¶9]    On the changing landscape of the law as it pertains to sentencing juvenile offenders, we have explained:

> In 2012 . . . the United States Supreme Court issued its decision in *Miller*. The *Miller* Court held that a life sentence for juveniles violates the Eighth Amendment for all but "the rarest of children, those whose crimes reflect irreparable corruption." *Montgomery v. Louisiana*, 577 U.S. ——, ——, 136 S.Ct. 718, 726, 193 L.Ed.2d 599 (2016), *as revised* (Jan. 27, 2016) (citations and internal quotation marks omitted); *see also Miller*, 567 U.S. at 479[–80], 132 S.Ct. at 2469. Accordingly, *Miller* requires juvenile sentencing courts to consider a child's "diminished culpability and heightened capacity for change" before sentencing a child to life in prison. *Id.* at 479, 132 S.Ct. at 2469. We adopted the *Miller* holding in *Bear Cloud II*, where we held that in order to fulfill the requirements of *Miller*, a trial court must consider "the factors of youth and the nature of the homicide at an individualized sentencing hearing when determining whether to sentence the juvenile offender to life without the possibility of parole or to life according to law." *Bear Cloud v. State*, 2013 WY 18, ¶ 42, 294 P.3d 36, 47 (Wyo. 2013) (*Bear Cloud II*).

---

[6] We have used terminology such as "permanent incorrigibility," "irreparably corrupt," and "irredeemable" interchangeably to refer to those truly rare juvenile offenders mentioned in *Miller*. *See, e.g.*, *Wiley v. State*, 2020 WY 49, 461 P.3d 413 (Wyo. 2020); *Davis I*, 415 P.3d 666; *Sam v. State*, 2019 WY 104, 450 P.3d 217 (Wyo. 2019) (*Sam II*).

3

> A *Miller* hearing is an individualized sentencing hearing in which the sentencing court must determine whether the defendant is "irreparably corrupt." *See Bear Cloud III*, ¶¶ 27, 33, 334 P.3d at 141–42; *Davis [I]*, ¶¶ 35–59, 415 P.3d at 679–85. Following *Miller*, in *Montgomery*, the United States Supreme Court held that *Miller* applied retroactively to juveniles who were sentenced prior to *Miller*. *See Davis [I]*, ¶ 38, 415 P.3d at 679–80. In response to *Miller* and *Bear Cloud II*, the Wyoming Legislature amended Wyo. Stat. Ann. § 6-10-301(c), by providing that juvenile offenders sentenced to life in prison are eligible for parole after [25] years.
>
> . . . .
>
> An aggregate sentence that is the functional equivalent of a life sentence for a juvenile violates the Eighth Amendment unless the juvenile is sentenced after being found "irreparably corrupt" in a *Miller* hearing. *Bear Cloud III*, ¶ 33, 334 P.3d at 141–42; *Davis [I]*, ¶¶ 24–28, 415 P.3d at 676–77.
>
> . . . .
>
> We have held that "[a]n aggregated minimum sentence exceeding the 45 [years in prison]/61 [years old at the earliest time of release] standard is the functional equivalent of life without parole and violates *Bear Cloud III*[,] *Miller* and [their] progeny." *Sam v. State*, 2017 WY 98, ¶ 80, 401 P.3d 834, 860 (Wyo. 2017).

*Wiley*, ¶¶ 7–10, 461 P.3d at 414–15.

[¶10]   To determine whether an aggregated minimum sentence violates the 45/61 standard we adopted in *Bear Cloud III*, we first calculate how many years the juvenile offender must serve before he is eligible for parole—beginning with his earliest possible release date from his murder sentence. This calculation to date has been straightforward, as in each case the juvenile offender had not yet served 25 years when, by operation of the amended statute, he would become eligible for parole from his life sentence. *See, e.g.*, *Wiley*, ¶ 1, 461 P.3d at 414 (sentenced in 1992); *Sam II*, ¶ 3, 450 P.3d at 218 (convicted in 2016); *Sen v. State*, 2017 WY 30, ¶¶ 4–5, 390 P.3d 769, 771 (Wyo. 2017) (*Sen III*) (crimes committed in 2009); *Bear Cloud III*, ¶¶ 4–8, 294 P.3d at 39–40 (convicted in 2010). To calculate the aggregate minimum sentence in prior cases, we simply added the number of years at the bottom of the sentencing range for each particular offender's consecutive sentence(s) to the number 25. If the sum of those years equaled 45 or less, the aggregate sentence satisfied the first

4

part of the 45/61 standard. *See Wiley*, ¶ 14, 461 P.3d at 416 (holding an aggregate sentence rendering Mr. Wiley eligible for parole after serving a minimum of 43 years, when he would be 58 years old, was not the functional equivalent of life in prison); *Sen III*, ¶ 19, 22, 390 P.3d at 775–76 (holding an aggregate sentence requiring Mr. Sen serve 35 years before he would be parole eligible is not functionally equivalent to life without parole); *Sam II*, ¶ 11, 450 P.3d at 221 (noting Mr. Sam's sentence rendered him eligible for parole after serving 35 years); *Sam I*, ¶ 80, 401 P.3d at 860 (holding Mr. Sam's sentence requiring he serve a minimum of 52 years with possible release on parole at age 70 violated *Bear Cloud III* and *Miller*); *Bear Cloud III*, ¶¶ 11, 33, 334 P.3d at 136, 142 (holding an aggregate sentence requiring Mr. Bear Cloud serve just over 45 years before he would be eligible for parole at age 61 was a de facto life sentence).

[¶11]   This case is different. Mr. Davis was sentenced in 1983 and had already served over 30 years when the legal landscape for juvenile sentencing changed and the legislature provided for the possibility of parole after serving 25 years on a life sentence. Under these unique circumstances we cannot simply default to using the number 25 in our aggregate minimum sentence calculation.

[¶12]   Mr. Davis presents several alternative dates for consideration in our calculation: December 15, 2015, when the Board paroled him from his first degree murder sentence; when the Board became aware the amended statutes applied to juvenile offenders like him (either on November 7, 2013, when the Wyoming Attorney General's Office advised the Board about the statute's application, or when we published *Mares* on October 9, 2014); or July 1, 2013, when the statutory amendments took effect. He argues December 15, 2015 is the most reasonable of those alternatives. The State counters that Mr. Davis became eligible for parole from his first degree murder sentence either after 25 years, pursuant to the plain language of Wyo. Stat. Ann. § 6-10-301(c), or when the statute went into effect on July 1, 2013. We conclude Mr. Davis became eligible for parole from his murder sentence to his consecutive sentence on July 1, 2013. From there, we calculate his aggregate minimum sentence and conclude it is constitutional because it falls below the 45/61 standard.

[¶13] To recap, in February 2013, we held that Wyoming's first degree homicide sentencing and parole scheme violated the Eighth Amendment when applied to juvenile offenders because it effectively mandated life in prison without the possibility of parole. *Mares*, ¶ 20, 335 P.3d at 495–96 (citing *Bear Cloud II*, ¶ 34, 294 P.3d at 45). Approximately one week later, the Governor approved a legislative enactment amending the statutes governing parole eligibility. *Id.* ¶ 20, 335 P.3d at 496. The amended statutes provide that, ***effective July 1, 2013***, a juvenile offender convicted of first degree murder shall be punished by life imprisonment and shall be eligible for parole after serving 25 years of his sentence. *Id.* ¶ 21, 335 P.3d at 496. In *Mares*, we found no fault in the Attorney General's 2013 formal opinion interpreting the amended statutes for the Board. *Id.* ¶¶ 24–25, 335 P.3d at 497–98. We determined that the amended statutes applied prospectively to

juvenile offenders who, like Mr. Mares, were sentenced to life imprisonment for murder under the former law. *Id.* ¶ 26, 335 P.3d at 498 ("Any juvenile offender sentenced to life imprisonment under the former law is now, by operation of the amended parole statutes, serving a sentence of life imprisonment with eligibility for parole in [25] years[.]").

[¶14] Mr. Davis had served 25 years of his life sentence in February 2008 (calculated from imposition of his original sentence on February 22, 1983) but the statute had not yet been amended, and it does not apply retroactively. *See id.* ¶¶ 24–25, 335 P.3d at 497 (finding no fault in the Attorney General's formal opinion that the statute applies prospectively rather than retroactively). He therefore was not eligible for parole from his murder sentence after serving 25 years, as the State asserts. The events subsequent to July 1, 2013 that Mr. Davis identifies also are immaterial. That the Board granted him parole on December 15, 2015 is irrelevant to our calculation of his aggregate minimum sentence based on his earliest *possible* release date. *See supra* ¶ 10. And that the Attorney General advised the Board about the statute's application in late 2013 and we issued *Mares* in 2014, does not change the fact that, by operation of law, Mr. Davis was eligible for parole from his murder sentence on July 1, 2013. Each subsequent event confirmed, but did not alter, that fact.

[¶15] Turning then to our aggregate minimum sentence calculation, Mr. Davis became eligible for parole from his murder sentence to his consecutive sentence on July 1, 2013, after serving 30 years, 4 months, and 10 days. He will be eligible for parole from his aggravated robbery sentence after serving 12 years. In sum, he must serve 42 years, 4 months, and 10 days on his aggregate sentence before he is eligible for parole. This calculated aggregate minimum sentence falls below the 45-year threshold. *See Wiley*, ¶ 10, 461 P.3d at 415.

[¶16] Considering next the age component of the *Bear Cloud III*, 45/61 standard, Mr. Davis will be 60 years old when he becomes eligible for parole (calculated from his September 23, 1964 birth date to his earliest possible release date on July 1, 2025). In other words, his age on the date of his earliest possible release is younger than the 61-year threshold we adopted in *Bear Cloud III*. *See Wiley*, ¶ 10, 461 P.3d at 415. Mr. Davis' sentence is, therefore, constitutional.

## II. *The court did not abuse its discretion when it sentenced Mr. Davis to 12 to 50 years for aggravated robbery.*

[¶17] Mr. Davis argues the court abused its discretion when it sentenced him to 12 to 50 years for aggravated robbery. The State contends we should refuse to consider his argument under law of the case. In the alternative, the State contends the court did not abuse its discretion. We conclude law of the case does not foreclose our review and Mr. Davis has established no abuse of discretion.

6

### A. Law of the Case

[¶18]  The State asserts we should refuse to consider Mr. Davis' argument because "[a] reversal on appeal 'affect[s] only those portions of the judgment from which an appeal is actually taken' and does not affect unappealed issues." *BTU W. Res., Inc. v. Berenergy Corp.*, 2019 WY 57, ¶ 27, 442 P.3d 50, 58 (Wyo. 2019) (quoting *Triton Coal Co. v. Husman, Inc.*, 846 P.2d 664, 669 (Wyo. 1993)).  The State reasons that Mr. Davis' "original motion to correct an illegal sentence only went to whether his sentence was unconstitutional under *Miller* and *Bear Cloud III*."  According to the State, the *Davis I* remand was likewise limited; the court was to decide whether Mr. Davis is one of those truly rare individuals incapable of reform, and sentence him accordingly.  Because Mr. Davis' abuse of discretion argument is unrelated to whether his current sentence is constitutional or otherwise illegal, the State maintains we should not consider it.

[¶19]  The law of the case doctrine generally prevents reconsideration of a decision that goes unchallenged on appeal.  *Id.* ¶ 27, 442 P.3d at 58.  That general rule applies if the appealed portion of a judgment is severable from the whole judgment.  *Id.* ¶ 28, 442 P.3d at 58.  If the appealed portion is not severable, then the appeal is an appeal from the whole judgment and reversal extends to the whole judgment.  *Id.*  These general principles reveal the flaw in the State's argument.

[¶20]  Mr. Davis' aggravated robbery sentence did not go unappealed in *Davis I*.  By challenging the constitutionality of his aggregate sentence under *Miller* and *Bear Cloud III*, Mr. Davis challenged his entire sentencing package, including his aggravated robbery sentence.  Our reversal extended to Mr. Davis' entire sentence, rather than some discrete part of it, as we "remand[ed] for an additional sentencing hearing and resentencing" on all counts.  *See Davis I*, ¶¶ 106–07, 415 P.3d at 696.  In other words, *Davis I* wiped the sentencing slate clean.  Under such circumstances, the law of the case does not prevent review.  *See Bear Cloud III*, ¶¶ 30, 45, 334 P.3d at 141, 146 (remanding for resentencing on all three counts because the United States Supreme Court wiped the slate clean when it vacated the judgment in *Bear Cloud I*, and rejecting the State's law of the case argument on similar grounds); *Pepper v. United States*, 562 U.S. 476, 507–08, 131 S.Ct. 1229, 1251, 179 L.Ed.2d 196 (2011) (determining law of the case did not apply because the court remanded for de novo resentencing); *see also Simonds v. State*, 799 P.2d 1210, 1213 (Wyo. 1990) (citations omitted) ("Just as a remand for retrial would 'wipe the slate clean' of a challenged conviction and sentence, so too would the finality of the initial sentencing be nullified by a remand for resentencing on all counts.").

### B. Aggravated Robbery Sentence

[¶21]  We review the court's decision to sentence Mr. Davis to 12 to 50 years for aggravated robbery for an abuse of discretion.  *Sam II*, ¶ 9, 450 P.3d at 221.  The court had "broad discretion to consider a wide variety of factors about [Mr. Davis] and his crimes"

7

when it resentenced him. *Schaeffer v. State*, 2012 WY 9, ¶ 51, 268 P.3d 1045, 1061 (Wyo. 2012) (citation omitted). Because Mr. Davis' aggravated robbery sentence falls within the authorized range for that offense,[7] our task is to "consult the information in front of the court and consider whether there was a rational basis from which the district court could reasonably draw its conclusion"; we do "not [ ] weigh the propriety of the sentence[.]" *Chapman v. State*, 2015 WY 15, ¶ 7, 342 P.3d 388, 391 (Wyo. 2015) (citation omitted).

[¶22] Mr. Davis challenges one sentence in the sentencing order where the court stated that "based on testimony from both Mr. Davis himself, and the Director of the Board of Parole, Mr. Fetsco, the Court finds that it is not appropriate to release Mr. Davis immediately, as there are a number of services that he should receive the benefit of before being placed upon supervision." He maintains that this stated reason for sentencing him to 12 to 50 years is not rationally based on any information presented at the sentencing hearing, as no evidence suggested he required enough services to justify a 12-year sentence.

[¶23] Read in isolation, this sentence does suggest the court imposed a 12- to 50-year sentence based on testimony that Mr. Davis needs 12 years of additional services. Yet the record contains no such testimony. Considering this statement in the broader context of the sentencing proceedings, however, we are reassured the court considered sufficient additional information to provide a rational basis for Mr. Davis' sentence. *See Royball v. State*, 2009 WY 79, ¶¶ 15–16, 210 P.3d 1073, 1077 (Wyo. 2009) (reviewing the judge's challenged comment in context of all his comments during the proceedings rather than in isolation, and concluding he did not abuse his discretion in denying appellant's motion to disqualify a judge).

[¶24] At the beginning of the 2019 sentencing hearing, the court expressly noted that it was "well familiar [with] many of the facts associated in this case." It had "reviewed the transcript associated with the [2016] sentencing hearing" and took "notice of all of that information." The court also had before it Mr. Davis' 2019 sentencing memorandum, an affidavit from his expert Dr. Mark Cunningham, and custom release planning. In addition, several witnesses testified at the 2019 hearing.

[¶25] The State's expert, Dr. Amanda Turlington, discussed her evaluation of Mr. Davis, noting that he met the criteria for antisocial personality disorder and opining that his crimes reflected irreparable corruption rather than transient immaturity. The original prosecutor addressed the crimes and Mr. Davis' role in their commission. A law enforcement officer offered insight into Mr. Davis' attitude following his arrest. Mr. Davis countered Dr.

---

[7] Mr. Davis does not dispute that his aggravated robbery sentence falls within the authorized sentencing range. When he committed aggravated robbery in September 1982, the applicable statute authorized a sentence of "not less than five (5) years nor more than fifty (50) years." *See, e.g.*, *Engberg v. State*, 686 P.2d 541, 546 n.2 (Wyo. 1984) (quoting Section 6-4-402, W.S. 1977). By contrast, the current aggravated robbery statute authorizes a sentence of "not less than five (5) years nor more than twenty-five (25) years[.]" Wyo. Stat. Ann. § 6-2-401(c) (LexisNexis 2019).

Turlington's testimony with Dr. Cunningham's testimony. He also called Daniel Fetsco, a professor familiar with Wyoming's prison system and the Wyoming Board of Parole, to discuss general matters pertaining to parole and Mr. Davis' disciplinary history.

[¶26] In its sentencing order, the court summarized the proceedings, made findings regarding several witnesses' testimony, summarized closing arguments, and considered the *Miller* factors.[8] Though the order made no express finding, the court clearly concluded on remand that Mr. Davis' crimes did not "reflect[] irreparable corruption resulting in permanent incorrigibility, rather than transient immaturity." *Davis I*, ¶ 54, 415 P.3d at 684. As noted above, Mr. Davis was paroled from his murder sentence to his aggravated robbery sentence in 2015; thus, the only remaining issue was the appropriate range for his consecutive aggravated robbery sentence. Deeming immediate release inappropriate, the court sentenced him to 12 to 50 years.

[¶27] Mr. Davis' testimony from the 2016 proceedings provides some insight into the court's decision.[9] On direct examination, Mr. Davis testified about his programming and accomplishments in prison, the nature of his disciplinary write-ups, his childhood, his close relationship with his mother, and his plans on release from prison. On cross-examination,

---

[8] The *Miller* Court identified some factors to consider at sentencing, including:

> (a) "the character and record of the individual offender [and] the circumstances of the offense,"
>
> (b) "the background and mental and emotional development of a youthful defendant,"
>
> (c) a juvenile's "chronological age and its hallmark features-among them, immaturity, impetuosity, and failure to appreciate the risks and consequences,"
>
> (d) "the family and home environment that surrounds" the juvenile, "no matter how brutal or dysfunctional,"
>
> (e) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressure may have affected" the juvenile,
>
> (f) whether the juvenile "might have been charged and convicted of a lesser offense if not for incompetencies associated with youth," e.g., the juvenile's relative inability to deal with police and prosecutors or to assist his own attorney,
>
> (g) the juvenile's potential for rehabilitation[.]

*Davis I*, ¶ 53, 415 P.3d at 683 (quoting *Bear Cloud II*, ¶ 42, 294 P.3d at 47) (internal citations omitted).
[9] Mr. Davis did not testify again during the 2019 proceedings.

9

however, the prosecutor questioned the accuracy of Mr. Davis' characterization of his childhood and relationship with his stepfather, suggested his programming had not been successful given the timing and nature of his disciplinary write-ups, and emphasized the seriousness of the underlying crimes.

[¶28] Though the court in 2019 did not find Mr. Davis to be irreparably corrupt, some of its earlier concerns about his potential for rehabilitation plainly carried forward. Those concerns were tempered somewhat by Mr. Fetsco's testimony, which shed light on the parole process and Mr. Davis' disciplinary history. The court found Mr. Fetsco's testimony compelling and helpful, stating:

> 4. The Court received compelling testimony from Mr. Dan Fetsco, a previous attorney representing the Department of Corrections and advising the Wyoming Board of Parole ("the Board"). Mr. Fetsco testified about the process of parole and the purpose of incarceration. Of note to the Court was testimony from Mr. Fetsco that there are several steps that the Board takes to prepare an individual for release on supervision including, but not limited to, training regarding changes in technology as well as budgeting and other issues related to day-to-day living. Furthermore, Mr. Fetsco testified that this training and information is provided based upon an individual's expected parole date and due to Mr. Davis' sentence, he has not been afforded any of these services to date.

> 5. Mr. Fetsco also addressed the seventeen (17) rule violations Mr. Davis had accumulated during his time incarcerated. He stated that none of the violations were caused by violent behavior, and four (4) of them had been dismissed, leaving only thirteen (13) on Mr. Davis['] permanent record. He further testified that thirteen violations were not unusual, or even a cause for concern, nor was the conduct that had caused the write-up, per se, conduct that would delay an individual being considered for parole.

> 6. He also noted that Mr. Davis had not received any violations since 2012, when the *Miller v. Alabama* decision came out. Mr. Fetsco stated that it was not unusual for inmates who had been sentenced to long sentences, without a chance of parole, to improve their behavior when they learned that they had a chance to be paroled. He attributed this not to trying to manipulate the system as much as affected inmates, such as Mr. Davis, gaining a bit of hope. The Court notes that Mr.

10

> Fetsco was an extraordinary objective witness, who did not favor any side of the proceedings other than the facts. His testimony was compelling and very instructive to the Court.

[¶29] Considering the resentencing proceedings in their entirety, it is apparent that the court had much evidence before it and balanced various considerations when it resentenced Mr. Davis. The court's 12- to 50-year aggravated robbery sentence reflects not just the court's belief that "it is not appropriate to release Mr. Davis immediately, as there are a number of services that he should receive the benefit of before being placed upon supervision" but a broader determination that Mr. Davis is not ready for immediate release and requires further rehabilitation. *See Croy v. State*, 2014 WY 111, ¶ 9, 334 P.3d 564, 568 (Wyo. 2014) (noting "four well-recognized purposes for sentencing: 1) rehabilitation, 2) punishment, 3) deterrence, and 4) removal from society"). Under these circumstances, we conclude that Mr. Davis has not met the high bar to overturn a sentencing decision on an abuse of discretion standard. *See Chapman*, ¶ 7, 342 P.3d at 391.

## *CONCLUSION*

[¶30] Mr. Davis' aggregate sentence is constitutional. The district court did not abuse its discretion when it sentenced him for aggravated robbery.

[¶31] Affirmed.