# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 25

### OCTOBER TERM, A.D. 2025

February 24, 2026

EAVAN CASTANER,

Appellant
(Defendant),

v.                                                          S-25-0107

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
The Honorable Daniel L. Forgey, Judge

*Representing Appellant:*
Ryan A. Semerad, Fuller & Semerad, LLC, Casper, Wyoming.

*Representing Appellee:*
Keith G. Kautz, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General. Argument by Ms. Jones.

*Amicus Curiae Juvenile Law Center:*
Ian Sandefer, Sandefer & Woolsey Trial Lawyers, LLC, Casper, Wyoming.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, and JAROSH, JJ., and WESTBY, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**WESTBY, District Judge.**

[¶1]   Eavan Castaner, who was fifteen years old at the time of his crime, plead guilty to an amended charge of second-degree murder.  On appeal, Mr. Castaner argues that the district court's sentence was illegal and violated Article 1, Section 14 of the Wyoming Constitution's prohibition on cruel or unusual punishment.  Finding that Mr. Castaner's sentence was within the permissible statutory sentencing range and was not unusual[1] under the Wyoming Constitution, we affirm.

## ISSUES

[¶2]   Mr. Castaner presents two issues which question whether the district court imposed a legal sentence.  The first issue challenges the lawfulness of his sentence under two separate Wyoming statutes while the remaining issue challenges his sentence under the Wyoming Constitution.  We organize and rephrase those issues as:

I.     Does Wyo. Stat. Ann. § 6-10-301(c) apply to a juvenile offender who received a term of years sentence?
II.    Was the district court's sentence consistent with the punishment authorized by Wyoming statute for second-degree murder?
III.   Did the district court's sentence violate the prohibition against cruel or unusual punishment under Article 1, Section 14 of the Wyoming Constitution?

## FACTS

[¶3]   On May 14, 2024, shortly after midnight, law enforcement officers were dispatched to Buckboard Park in Casper for a reported shooting.  The caller identified the victim as 17-year-old L.B. and the shooter as 15-year-old Eavan Castaner.  Upon arrival, law enforcement observed L.B. laying in the middle of the street with a gunshot wound to the head.  Shortly after L.B. arrived at the hospital, it was determined she was deceased.

[¶4]   During the investigation, officers learned Mr. Castaner had dated L.B. for approximately a year but they had broken up around April 18, 2024.  Mr. Castaner began seeing another girl, J.B.  Despite the breakup and his new relationship, Mr. Castaner continued to call L.B. and send harassing and threatening messages to her, even though she asked him to leave her alone.  Examples of messages Mr. Castaner sent to L.B. included "Ur a b***h I hope you die slowly im go an celebrate when you die," "Ur useless waste of air J.Bs] way better than you idk why I wasted a year of my life on ur hoe a**," and "I

---

[1] *See infra* ¶ 26.  We do not analyze whether the sentence was cruel, as Mr. Castaner conceded that point in his supplemental brief.

hope you die in the most painful way possible." Mr. Castaner sent these messages the day before the shooting. L.B. responded by telling Mr. Castaner to quit texting her.

[¶5]   Some of L.B.'s family members saw the messages, including her cousin, R.R. R.R. reached out to L.B. about the messages. L.B. told R.R. that the messages were from Mr. Castaner and that he would not leave her alone. R.R. then messaged Mr. Castaner and told him to leave L.B. alone. This interaction escalated to Mr. Castaner wanting to fight R.R. in Buckboard Park, to which R.R. agreed. Mr. Castaner sent R.R. a video of a gun and a message threatening to shoot R.R. L.B. told R.R. that Mr. Castaner did not have a gun. However, Mr. Castaner did possess a gun. While his mother was out of town, Mr. Castaner took a handgun that his mother kept in a concealed carry case in her closet. Mr. Castaner took that handgun to the park to confront R.R.

[¶6]   Before going to the park, Mr. Castaner's friend, R.S., tried to convince Mr. Castaner not to go through with hurting anyone. R.S. went to the park to try to stop Mr. Castaner, including trying to physically restrain him and pinning him to the ground at one point. When his attempts failed, R.S. walked back to his car and Mr. Castaner remained at the park.

[¶7]   According to witnesses, L.B. arrived at the park with R.R. and two other individuals. R.S. was in his car watching the interaction. R.R. and L.B. walked towards Mr. Castaner while the other two individuals stayed behind and went behind a tree. R.R. was carrying a baseball bat but did not threaten Mr. Castaner with the bat. While approaching, R.R. heard a slide on a pistol rack and Mr. Castaner saying "What!" R.R. then began to walk backwards away from Mr. Castaner. L.B. continued towards Mr. Castaner and raised her fist as if to hit him. Mr. Castaner then shot L.B. in the face and she fell immediately to the ground. Another individual who came to the park with L.B. had a firearm and fired a few rounds towards Mr. Castaner as he fled the park area.

[¶8]   Mr. Castaner was apprehended at J.B.'s house shortly after the shooting. Mr. Castaner spoke with law enforcement and his story mostly matched the witnesses' accounts. Mr. Castaner admitted that he shot one round from his pistol at L.B. when she was approximately three to four feet away from him after she approached him and appeared to be preparing to punch him. Mr. Castaner told law enforcement he had retrieved the pistol from his mother's residence a few days prior, and he knew the magazine was loaded.

[¶9]   On May 15, 2024, the State charged Mr. Castaner with first-degree murder, under Wyo. Stat. Ann. § 6-2-101(a) (2024), and misdemeanor stalking, under Wyo. Stat. Ann. § 6-2-506 (2024). Pursuant to a plea agreement, Mr. Castaner plead guilty to an amended charge of second-degree murder, under Wyo. Stat. Ann. § 6-2-104 (2024), and misdemeanor stalking. The plea agreement did not include a specific sentence recommendation for the second-degree murder charge. For the misdemeanor stalking, the sentence recommendation was for time served.

2

[¶10] Sentencing in this case became an issue because of constitutional considerations related to juvenile sentencing arising from *Miller v. Alabama*, 567 U.S. 460 (2012) and its progeny cases, our *Bear Cloud* line of cases, and Wyoming statutes that generally prohibit life sentences for juveniles without an individualized sentencing hearing and a finding of permanent incorrigibility.[2] The *Bear Cloud* line of cases[3] and Wyoming statutes effectively define a juvenile life sentence as one without parole eligibility and use twenty-five years as a benchmark for parole eligibility where the sentence is life. Prior to sentencing, the district court held a status conference to discuss some of these preliminary issues related to the sentencing hearing. Both the prosecutor and defense counsel agreed that the sentencing hearing appeared to be an individualized sentencing hearing. At the status conference, the State informed the district court that it believed the case was governed by *Sam v. State*, 2017 WY 98, 401 P.3d 834 (Wyo. 2017). The Court requested sentencing memoranda from both the State and defense counsel regarding the district court's lawful sentencing options.

[¶11] In its sentencing memorandum, the State asserted it was not asking the district court to consider the question of incorrigibility, but instead argued the 45/61 rule announced in *Bear Cloud v. State*, 2014 WY 113, 334 P.3d 132 (Wyo. 2014) (*Bear Cloud III*) applied to Mr. Castaner and that the State's sentencing recommendation would comply with the limitations set by *Bear Cloud III*. Based on that understanding of the law, the State recommended a sentence of forty-four to seventy-five years of incarceration for the second-degree murder charge. For the misdemeanor stalking charge, the State asked for a sentence of 330 days of incarceration with credit for 330 days already served and that the sentence run concurrent to the second-degree murder sentence.

[¶12] The defense objected to the State's sentencing recommendation and argued it violated the Wyoming Constitution. Instead, the defense asked the district court to sentence Mr. Castaner to a sentence of twenty-two to thirty years of incarceration. In the defense's sentencing memorandum, Mr. Castaner argued a life sentence for a juvenile was

---

[2] Under *Miller*, the United States Supreme Court did not categorically bar life without parole sentences for juveniles, but instead, required that before a life without parole sentence was imposed, the sentencing court hold an individualized sentencing hearing to consider "an offender's youth and attendant circumstances." 567 U.S. at 483. Under Wyoming law, permanent incorrigibility has been described as "irreparable corruption," *Sen v. State*, 2013 WY 47, ¶ 51, 301 P.3d 106, 127 (Wyo. 2013) (*Sen I*), and distinguished from "transient immaturity." *Davis v. State*, 2018 WY 40, ¶ 54, 415 P.3d 666, 684 (Wyo. 2018).

[3] *See, e.g.*, *Davis v. State*, 2020 WY 122, 472 P.3d 1030 (Wyo. 2020); *Sam v. State*, 2019 WY 104, 450 P.3d 217 (Wyo. 2019); *Sen v. State*, 2017 WY 30, 390 P.3d 769 (Wyo. 2017); *Bear Cloud v. State*, 2014 WY 113, ¶ 1, 334 P.3d 132, 135 (Wyo. 2014) (Bear Cloud III); *Bear Cloud v. State*, 2013 WY 18, ¶ 1, 294 P.3d 36, 39 (Wyo. 2013) (Bear Cloud II); *Bear Cloud v. State*, 2012 WY 16, ¶ 17, 275 P.3d 377, 385 (Wyo.), cert. granted, judgment vacated, 568 U.S. 802, 133 S. Ct. 183, 184 L. Ed. 2d 5 (2012) (Bear Cloud I).

twenty-five years according to Wyo. Stat. Ann. § 6-10-301(c) (2024)[4] and *Bear Cloud III*, and therefore, was the maximum sentence a juvenile homicide offender could receive. When Wyo. Stat. Ann. § 7-13-201 (2024)[5] was applied, the maximum bottom number of the indeterminate sentence[6] a juvenile homicide offender could receive was 22.5 years or 90% of twenty-five years. Therefore, the defense argued the maximum sentence a juvenile convicted of second-degree murder could receive was 22.5 years to life. Mr. Castaner also argued that if the district court imposed a term of years sentence instead, that it could not impose a minimum term of incarceration that exceeded forty-three years, based on *Bear Cloud III* and *Wiley v. State*, 2020 WY 49, 461 P.3d 413 (Wyo. 2020), because essentially, that would be imposing a functional life without parole sentence.

[¶13]   The district court acknowledged the State was not requesting the court to impose a life sentence on Mr. Castaner. The district court also discussed some of the differences between the sentencing structures for first-degree and second-degree murder. Ultimately, the district court sentenced Mr. Castaner to time served on the misdemeanor stalking charge. As to the second-degree murder charge, the district court sentenced Mr. Castaner to 42-to-75-years of incarceration with credit for 330 days for prior time served.

## STANDARD OF REVIEW

---

[4] The relevant portion of Wyo. Stat. Ann. § 6-10-301(c) reads: "A person sentenced to life imprisonment for an offense committed before the person reached the age of eighteen (18) years shall be eligible for parole after commutation of his sentence to a term of years or after having served twenty-five (25) years of incarceration . . . ."

[5] When a person is convicted of and sentenced to a felony, the sentencing court:

> shall not fix a definite term of imprisonment but shall establish a maximum and minimum term within the limits authorized for the statute violated. The maximum term shall not be greater than the maximum provided by law for the statute violated, and the minimum term shall not be less than the minimum provided by law for the statute violated, nor greater than ninety perfect (90%) of the maximum term imposed.

Wyo. Stat. Ann. § 7-13-201.

[6] An indeterminate sentence is a sentence with "[a] maximum jail term that the parole board can reduce, through statutory authorization, after the inmate has served the minimum time required by law." *Indeterminate Sentence*, Black's Law Dictionary (12th ed. 2024). Indeterminate sentencing for felonies in Wyoming is required, unless a life sentence is imposed. Wyo. Stat. Ann. § 7-13-201. Mr. Castaner asks us to reconsider the holding in *Ryan v. State*, 988 P.2d 46, 62-63 (Wyo. 1999) (interpreting Wyo. Stat. Ann. § 7-13-201 "to mean that the district court is not required to establish a minimum term where a life sentence is imposed but was not required by statute."), or at least declare *Ryan* does not apply to juveniles. However, we do not need to address that issue because Mr. Castaner was not given a life sentence and instead was given an indeterminate sentence with a minimum and maximum. Therefore, *Ryan* does not apply to Mr. Castaner. *See Ryan*, 988 P.2d at 62-63.

4

[¶14] Mr. Castaner argues the district court's sentence was illegal[7] and unconstitutional under the Wyoming Constitution. We apply the following standard of review to Mr. Castaner's allegation that the sentence was illegal:

> "An illegal sentence is one which exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates constitutions or the law." *Sanchez v. State,* 982 P.2d 149, 150 (Wyo.1999) (*citing Duran v. State,* 949 P.2d 885, 887 (Wyo.1997)). The determination of whether a sentence is illegal is made by reference to the authorizing statute or applicable constitutional provisions and is, therefore, a matter of statutory interpretation. Interpretation of statutes is a question of law, which we review de novo. *French v. Amax Coal West,* 960 P.2d 1023, 1027 (Wyo.1998); *Chevron U.S.A., Inc. v. State,* 918 P.2d 980, 983 (Wyo.1996).

*Bush v. State*, 79 P.3d 1178, 1182 (Wyo. 2003) (quoting *Ryan v. State*, 988 P.2d 46, 62-63 (Wyo. 1999)).

[¶15] Mr. Castaner's challenge of the constitutionality of his sentence is a question of law. *Hicks v. State*, 2025 WY 113, ¶ 25, 578 P.3d 366, 378 (Wyo. 2025). Issues of constitutionality are reviewed "under a de novo standard of review and [we] afford no deference to the district court's determinations on the issues." *Bear Cloud III*, ¶ 13, 334 P.3d 132, 137.

## DISCUSSION

[¶16] To determine whether Mr. Castaner's sentence for second-degree murder was legal and within the confines of Wyoming law, we first must establish what statutes govern Mr. Castaner's case. The parties agree Wyo. Stat. Ann. § 6-2-104(a)[8] applies. The parties also agree Wyo. Stat. Ann. § 7-13-201 applies because Mr. Castaner was sentenced to a term of years. However, the parties disagree as to whether Wyo. Stat. Ann. § 6-10-301(c) applies. Mr. Castaner argues § 6-10-301(c) applies because the maximum sentence for a violation of second-degree murder is a life sentence which means the maximum parole ineligibility period for a juvenile offender convicted of second-degree murder is twenty-five years based on § 6-10-301(c). Therefore, according to Mr. Castaner, the sentencing

---

[7] Although Mr. Castaner did not file a request to correct an illegal sentence in the district court, it is proper for us to consider his appeal because "[a] claim of an unlawful sentence . . . can be raised in a direct appeal . . . ." *Leger v. State*, 855 P.2d 359, 363 (Wyo. 1993).

[8] Wyo. Stat. Ann. § 6-2-104(a) provides: "whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life."

court is limited by the twenty-five-year parole ineligibility period.  The State argues § 6-10-301(c) does not apply to second-degree murder because the Legislature's modification to that provision was in response to *Miller v. Alabama*, 567 U.S. 460 (2012) which held a mandatory life-without-parole sentence for a juvenile homicide offender violated the Eighth Amendment. 567 U.S. at 470.  In light of this disagreement, we must engage in statutory interpretation to determine whether § 6-10-301(c) applies to Mr. Castaner before we can analyze whether Mr. Castaner was given a legal sentence.

**I.      Wyo. Stat. Ann. § 6-10-301(c) does not apply to Mr. Castaner's sentence.**

[¶17]  When interpreting statutes, our primary goal is to ascertain legislative intent. *State v. Mares*, 2014 WY 126, ¶ 23, 335 P.3d 487, 497 (Wyo. 2014) (*citing Rock v. Lankford*, 2013 WY 61, ¶ 19, 301 P.3d 1075, 1080 (Wyo. 2013)). To achieve this goal, courts construe statutes in pari materia and interpret "statutes relating to the same subject or having the same general purpose" in harmony.  *Id.*  Courts begin by looking to the plain language of the statute and use the ordinary and everyday meaning.  *Id.*  If the language of the statute is clear and unambiguous, "we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction."  *Id.*  "We construe the statute as a whole giving effect to every word, clause, and sentence" and "will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions."  *Id.*  With those well settled statutory interpretation principles in mind, we turn to the interpretation of Wyo. Stat. Ann. § 6-10-301(c).

[¶18]  The relevant portion of § 6-10-301(c) states "[a] person sentenced to life imprisonment for an offense committed before the person reached the age of eighteen (18) years shall be eligible for parole after commutation of his sentence to a term of years or after having served twenty-five (25) years of incarceration . . . ." Based on the plain language of the statute, subsection (c) applies only to juvenile offenders who received a life sentence.  In response to *Miller*, the Legislature amended the law to ensure juvenile homicide offenders who received a sentence of life imprisonment had a meaningful opportunity for release by either (1) having their life sentence commuted to a term of years sentence, or (2) if the sentence remained life imprisonment, the juvenile would be parole eligible after serving twenty-five years in prison.  § 6-10-301(c); *see Davis v. State*, 2018 WY 40, ¶ 30 n. 4, 415 P.3d 666, 677 n. 4 (Wyo. 2018) ("As recognized by the Supreme Court in *Montgomery*, Wyoming has accounted for juveniles sentenced to life imprisonment. By operation of Wyo. Stat. Ann. § 6-10-301(c) . . . ."); *see also Miller*, 567 U.S. at 479 (*citing Graham v. Florida*, 560 US 48, 75 (2010)) ("A State is not required to guarantee eventual freedom, "but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.").  Upon commutation of a life sentence to a term of years, the individual would be eligible for parole and to receive good time.  *See* Wyo. Stat. Ann. § 7-13-402(a) (2024) ("The board may grant a parole to any person imprisoned in any institution under sentence, except a sentence of life imprisonment without parole or a life sentence . . . ."); Wyo. Rules and Reg. 001.0001.0 § 2(e) ("An

6

inmate serving a life sentence or a sentence of death is not eligible for good time allowances."); *see also Bird v. Wyo. Bd. of Parole*, 2016 WY 100, ¶¶ 13-14, 382 P.3d 56, 63-64 (Wyo. 2016). In the alternative, if the life sentence was not commuted to a term of years sentence, the Legislature ensured that a juvenile homicide offender would still be eligible for parole after serving twenty-five years in prison. § 6-10-301(c); Wyo. Stat. Ann. § 7-13-402(a) ("The board may also grant parole to a person serving a sentence for an offense committed before the person reached the age of eighteen (18) years of age as provided in W.S. 6-10-301(c).").

[¶19] Because Mr. Castaner was sentenced to a term of years and not a life sentence, § 6-10-301(c) does not apply. To apply the statute to a juvenile homicide offender who received a term of years sentence, we would have to ignore the plain language of the statute. Subsection (c) applies to juveniles "sentenced to life imprisonment." Wyo. Stat. Ann. § 6-10-301(c). To reach Mr. Castaner's interpretation, we would have to read additional language into the statute which would be an impermissible overstep by the courts. *See* Wyo. Stat. Ann. § 6-10-301(c); *Mares*, ¶ 23, 335 P.3d at 497. In addition, if we were to follow Mr. Castaner's interpretation, the phrase "after commutation of his sentence to a term of years" would serve no purpose. We cannot interpret a statute in a way that would render a portion of the statute meaningless. *Matter of U.S. Currency Totaling $470,040.00*, 2020 WY 30, ¶ 22 n. 5, 459 P.3d 430, 436 n. 5 (Wyo. 2020). If § 6-10-301(c) applied to juvenile offenders who were already sentenced to a term of year sentence, there would be no need for the Legislature to include the alternative that the governor could commute a life sentence to a term of years sentence.

[¶20] We are cognizant of the important doctrine of separation of powers that is implicated when courts engage in statutory interpretation. As we have explained previously, our role is to interpret the statute as written:

> [C]ourts are not free to legislate. The first rule of statutory construction is that legislative intent, not a court's perception of fairness, controls. It is not the court's prerogative to usurp the power of the legislature by deciding what should have been said. The courts must follow, and cannot extend, statutory definitions. For over a century, courts in Wyoming have recognized that it is their duty only to interpret and declare what the law is, not to be responsible for its defects. And of specific importance to the instant case is the precept that exceptions not made by the legislature in a statute cannot be read into it.

*Delcon Partners, LLC v. Wyo. Dep't of Revenue*, 2019 WY 106, ¶ 10, 450 P.3d 682, 685 (Wyo. 2019) (quoting *Seherr-Thoss v. Teton Cty. Bd. of Cty. Comm'rs,* 2014 WY 82, ¶ 20, 329 P.3d 936, 945 (Wyo. 2014)). If the language of a statute is clear, "a court risks an

impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature." *Sinclair Wyo. Refining Co. v. Infrassure, Ltd.*, 2021 WY 65, ¶ 13, 486 P.3d 990, 995 (Wyo. 2021) (quoting *Taylor v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 2003 WY 83, ¶ 10, 72 P.3d 799, 802 (Wyo. 2003)). This is an important rule of statutory interpretation because "[t]his inhibition upon statutory construction offers assurance that the legislative efforts and determinations of elected representatives will be made effective without judicial adjustment." *Sinclair Wyo. Refining Co.*, ¶ 13, 486 P.3d at 995 (quoting *Taylor*, 72 P.3d at 802).

[¶21] Therefore, based on the plain language of the statute, we hold that Wyo. Stat. Ann. § 6-10-301(c) does not apply to Mr. Castaner, a juvenile who was sentenced to a term of years because he was not sentenced to "life imprisonment" and already has the possibility of being paroled in the future.

## II. Mr. Castaner's sentence does not exceed the punishment for second-degree murder established by Wyoming statute.

[¶22] This Court has explained an illegal sentence "exceeds statutory limits, imposes multiple terms of imprisonment for the same offense, or otherwise violates constitutions or the law." *Bush*, 79 P.3d at 1182 (*citing Ryan*, 988 P.2d at 62-63). To determine whether a sentence is illegal, courts refer to "the authorizing statute or applicable constitutional provisions [which] is, therefore, a matter of statutory interpretation." *Id.* "[A] court may only impose a sentence of incarceration that falls within the minimum and maximum punishment prescribed by statute." *Daugherty v. State*, 44 P.3d 28, 34 (Wyo. 2002).

[¶23] Turning to Mr. Castaner, he was sentenced for second-degree murder under Wyo. Stat. Ann. § 6-2-104(a). The punishment for second-degree murder is "not less than twenty (20) years, or during life." § 6-2-104(a). Further, "Wyoming is an indeterminate sentencing state that requires courts to prescribe a minimum and maximum term of confinement when a sentence for a felony is imposed." *Cothren*, ¶ 29, 310 P.3d at 916. The minimum and maximum terms must be within the limits set by the statute violated and the minimum term imposed cannot be higher than 90% of the maximum term imposed. Wyo. Stat. Ann. § 7-13-201. Mr. Castaner received a sentence of 42-to-75 years of incarceration. This sentence falls within the permissible statutory limit set by the Legislature for second-degree murder and complies with § 7-13-201. As currently written, there is no exception in the statute for juvenile's convicted of second-degree murder. *Compare* Wyo. Stat. Ann. § 6-2-104 (". . . whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second-degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life."), *with* Wyo. Stat. Ann. § 6-2-101(b) (2024) ("A person convicted of murder in the first degree shall be punished by death, life imprisonment without parole or life imprisonment according to law, except that a person convicted of murder in the first degree who was under the age of eighteen (18) years at the

8

time of the offense shall be punished by life imprisonment."). A contrary determination would usurp the power of the Legislature. *Daugherty*, 44 P.3d at 34 ("The legislative branch has the exclusive power to define crimes and to prescribe punishments for those crimes."). Mr. Castaner's sentence is not illegal based on the applicable Wyoming statute. Having determined that the sentence complies with Wyoming Statutes, we next address whether it violates Article 1, Section 14 of the Wyoming Constitution.

## III.    Mr. Castaner's sentence does not violate Article 1, Section 14 of the Wyoming Constitution.

[¶24] Mr. Castaner argues his sentence is unconstitutional and violates Wyoming's prohibition against cruel or unusual punishment under Article 1, Section 14 of the Wyoming Constitution.[9] The Wyoming Constitution prohibits the imposition of "cruel or unusual punishment" upon its citizens. Art. 1, § 14, Wyo. Const. In *Hicks v. State*,[10] this Court recently determined "a challenger is only required under Section 14 to show that the sentence was *either* cruel or unusual before they are entitled to relief." 2025 WY 113, ¶¶ 78-79, 578 P.3d 366, 388 (Wyo. 2025) (emphasis added). This Court then explained the bifurcated approach that courts must use to analyze whether a specific punishment is either cruel or unusual under the Wyoming Constitution. *Hicks*, ¶¶ 110-119, 578 P.3d at 395-97. We will analyze below whether Mr. Castaner's sentence was cruel or unusual using the *Hicks* test.

### A.    Mr. Castaner's sentence is not cruel under the Wyoming Constitution.

[¶25] Under Article 1, Section 14, "a punishment is 'cruel' . . . if the punishment is so grossly disproportionate to the offense that it shocks the moral sense of the people." *Hicks*, ¶ 116, 578 P.3d at 396. Courts should consider "the gravity of the offense and the harshness of the penalty." *Id.*, ¶ 117, 578 P.3d at 396-97. In this analysis, courts are not comparing the offender and his or her characteristics with the harshness of the penalty but rather are comparing "the gravity of the offense with the harshness of the penalty." *Id.*, ¶ 122, 578 P.3d at 397.[11]    In doing so, courts should consider "the offender's actual criminal

---

[9] Mr. Castaner did not put forth a separate argument under the Eighth Amendment of the United States Constitution; therefore, this Court will analyze Mr. Castaner's argument solely under the Wyoming Constitution. *See Woods v. State*, 2017 WY 111, ¶ 18, 401 P.3d 962, 969 (Wyo. 2017) (explaining that courts will not consider issues that were not thoroughly raised by the parties); *see also Klomliam v. State*, 2014 WY 1, ¶ 17, 315 P.3d 665, 669 (Wyo. 2014) (limiting the court's analysis to the Wyoming Constitution because the appellant did not assert a separate argument under the United States Constitution).

[10] While *Hicks* was issued after the oral argument in this matter, the parties were given the opportunity to provide supplemental briefing in light of the new bifurcated test established in *Hicks* for Article 1, Section 14 challenges.

[11] In *Hicks*, this Court was not asked to decide whether a defendant's juvenile status should be factored into the proportionality analysis because Hicks was an adult when he committed his crimes. *Hicks*, ¶ 4, 122, 578 P.3d at 375, 397. We once again do not have to address the question of whether a defendant's juvenile

conduct[,]" not simply the offense for which the offender was convicted. *Id.*, ¶ 117. "Only if the Court concludes the punishment is grossly disproportionate to the crime does it then determine whether that punishment shocks the moral sense of the people." *Id.* It will be the "very extreme cases" that a punishment is deemed cruel. *Id.*

[¶26] Mr. Castaner originally argued his punishment was cruel; however, after the *Hicks* opinion was issued, he conceded in supplemental briefing that his 42-to-75-year sentence for second-degree murder is not a cruel punishment based on his actual criminal conduct. Because Mr. Castaner concedes his punishment is not cruel under Article 1, Section 14, of the Wyoming Constitution, we will not analyze his sentence under the "cruel" portion of the *Hicks* test.

### B. Mr. Castaner's sentence is not unusual under the Wyoming Constitution.

[¶27] To ascertain whether a sentence is "unusual" under Article 1, Section 14, courts must determine if "the punishment is obsolete or contravenes contemporary standards as measured by a clear consensus of state legislatures or courts." *Hicks*, ¶ 118, 578 P.3d at 397.

> Obsolete punishments are modes of punishment deemed antiquated by historical standards. *See In re McDonald*, 33 P. at 21 (identifying examples of obsolete punishments); *see also In re Kemmler*, 136 U.S. at 446, 10 S.Ct. 930 (discussing "the duty of courts" to invalidate punishments considered objectionable at the time of founding). To determine whether a punishment is unusual by contemporary standards we compare the punishments imposed for the commission of the same crime in other state jurisdictions. *Norgaard*, ¶ 11, 339 P.3d at 271 (quoting *Solem*, 463 U.S. at 292, 103 S.Ct. 3001)). A punishment is unusual by contemporary standards when a clear consensus of state legislatures has abandoned the practice, or courts have deemed the punishment contrary to law. *See id.,* ¶¶ 27-28 (comparing jurisdictions). The mere fact a punishment is unique to Wyoming is not sufficient to demonstrate it is an unusual punishment. *See Johnson*, ¶ 37, 61 P.3d at 1249 (rejecting argument the "uniqueness" of a sentencing scheme rendered it unusual).

---

status should factor into the cruel analysis under Article 1, Section 14, of the Wyoming Constitution because Mr. Castaner conceded his punishment was not cruel.

*Id.*, ¶ 119.

[¶28] Mr. Castaner argues that his 42-to-75-year sentence[12] is unusual because, based on § 6-10-301(c), the Legislature has rejected periods of incarceration exceeding twenty-five years for juvenile offenders. In addition, he argues that thirty-five other states have also abandoned the practice of imposing parole ineligibility periods on juvenile homicide offenders that are greater than twenty-five years. Conversely, the State argues that, even if Wyoming is in the minority of states that would allow this sentence, no clear national consensus exists which rejects Wyoming's sentencing practices for juvenile offenders convicted of second-degree murder.

[¶29] When discussing punishments that would be considered obsolete, courts have looked at the form of the punishment rather than the length of incarceration. *In re MacDonald*, 33 P. 18, 21 (Wyo. 1893) (discussing obsolete punishments such as the whipping post and larceny and forgery being capital offenses); *see also In re Kemmler*, 136 U.S. 436, 446-47 (1890); *Ratliff v. Cohn*, 693 N.E.2d 530, 542 (Ind. 1998) ("Generally, the constitutional prohibitions against cruel and unusual punishments . . . are proscriptive of atrocious or obsolete punishments and are aimed at the kind and form of the punishment, rather than the duration and amount."). Mr. Castaner's argument is that his sentence is unusual because of the length of his sentence, not the form of punishment. Therefore, Mr. Castaner fails to meet his burden that his sentence was obsolete.

[¶30] Second, Mr. Castaner's 42-to-75-year sentence is not unusual under Article 1, Section 14, of the Wyoming Constitution because the punishment does not contravene contemporary standards as measured by a clear consensus of state legislatures or courts. Here, in compliance with *Hicks*, Mr. Castaner provides sufficient state-level analysis to consider the unusualness of his sentence. *Hicks*, ¶¶ 124-131, 578 P.3d at 398-99.

[¶31] To be successful, Mr. Castaner must demonstrate there is a clear consensus among state legislatures or courts that a 42-to-75-year sentence for a juvenile convicted of second-degree murder contravenes contemporary standards and the practice has either been abandoned by state legislatures or courts have deemed the sentence contrary to law. To accomplish this, Mr. Castaner provided information regarding other state statutes and

---

[12] The Court notes that Mr. Castaner's sentence satisfies the 45/61 standard announced in *Bear Cloud III*. *See Davis*, ¶ 10, 472 P.3d at 1033-34. *Bear Cloud III* determined that when a juvenile's earliest possibility of parole was after serving 45 years of imprisonment, and the juvenile would be released at the age of sixty-one, that sentence amounted to "the functional equivalent of life without parole." *Id.*, ¶ 33, 334 P.3d at 142. Mr. Bear Cloud was convicted of first-degree murder, among other offenses, for which life without parole was a possible sentence. *Id.*, ¶ 4, 334 P.3d at 135. However, Mr. Castaner plead guilty to second-degree murder, for which life without parole is not a possible sentencing option. Wyo. Stat. Ann. § 6-2-104(a). Since Mr. Castaner's sentence was under the 45/61 standard, we do not have to determine whether the 45/61 standard in *Bear Cloud III* should be extended to juveniles convicted of second-degree murder. We leave that question for another day.

argues his minimum term of forty-two years in prison would only be legal in fourteen other states. Further, when the maximum term of seventy-five years is considered, Mr. Castaner argues his sentence is only legal in eight states. Even if we consider Mr. Castaner's data and information as true,[13] he fails to meet the considerable burden of demonstrating a clear consensus of state legislatures has abandoned the practice of sentencing juveniles to a sentence similar to Mr. Castaner's. While the data demonstrates Wyoming may be in the minority of states that would allow Mr. Castaner's sentence, there is not an obvious and generally accepted opinion among state legislatures that a 42-to-75-five-year sentence for a juvenile convicted of second-degree murder is never permissible or warranted. *See e.g.*, Alaska Stat. § 12.55.125(b) (2024) ("A defendant convicted of murder in the second degree . . . shall be sentenced to a definite term of imprisonment of at least fifteen years but not more than ninety-nine years."); Neb. Rev. Stat. §§ 28-105(1), -304(2) (2024) (second-degree murder is punishable by a minimum of twenty years to a maximum of life imprisonment); Pa. Cons. Stat. § 1102.1(c)(1) (2024) ("A person who at the time of the commission of the offense was fifteen years of age or older shall be sentenced to a term of imprisonment the minimum of which shall be at least thirty years to life."). Even if Wyoming was the only state that allowed this particular sentence, that may still be insufficient to demonstrate that Wyoming's law contravenes contemporary standards by a clear consensus. *Hicks*, ¶ 119, 578 P.3d at 397. It will be a rare situation where an appellant can meet this considerable burden. *Cf. Tennessee v. Booker*, 656 S.W.3d 49, 63 (Tenn. 2022) (determining that a mandatory sentence of sixty years, with release after serving fifty-one years if all good time credit is received, for a juvenile convicted of felony murder offended contemporary standards of decency because "Tennessee is a clear outlier . . . [and] is the harshest of any sentence in the country" when the next closest punishment in severity in another state would have a juvenile offender released after serving [thirty-five] years of incarceration). Some state legislatures have enacted statutes that address allowable sentence ranges and parole eligibility of juvenile offenders convicted of second-degree murder. *E.g.,* Mass. Gen. Laws Ann. ch. 119, § 72B (2024); 18 Pa. Stat. and Cons. Stat. Ann. § 1102.1. Wyoming does not have such a statute, and it is not this Court's role to legislate. *Delcon Partners,* ¶ 10, 450 P.3d at 685. Mr. Castaner has failed to show that a clear consensus of state legislatures has abandoned the practice of sentencing juveniles convicted of second-degree murder to a period of incarceration of 42-to-75 years.

---

[13] While Mr. Castaner's data appears to mostly be accurate, there are some discrepancies from lack of context. For example, Mr. Castaner claims that the maximum term of imprisonment for a violation of Colo. Rev. Stat. § 18-3-103(3)(a) is twenty-four years of incarceration; however, that is the maximum term for the presumptive sentencing range. Colo. Rev. Stat. § 18-1.3-401(1)(a)(V.5)(A). In fact, Colorado law allows a sentencing court to deviate from the presumptive range up to twice the maximum of the presumptive range for various reasons including the presence of certain aggravating factors. Colo. Rev. Stat. § 18-1.3-401(1)(b)(I), (c)(IV)(6), (8)(a). Consequently, a sentencing court could determine that a sentence of 48 years is appropriate for a conviction of Colo. Rev. Stat. § 18-3-103(3)(a), even for a juvenile. *See Armstrong v. Colorado*, 2017 CO 51, 395 P.3d 748 (Colo. 2017) (affirming the trial court's aggregate sentence of ninety-six years for two counts of second-degree murder, forty-eight years for each count, for a juvenile who was sixteen years old at the time of the murders and was convicted under a complicity theory).

[¶32]  Mr. Castaner similarly has not met his burden of demonstrating a clear consensus of courts have conclusively determined sentences for second-degree murder like Mr. Castaner's contravene contemporary standards.  Some state courts that have affirmed sentences for second-degree murder committed by juveniles are lengthier than Mr. Castaner's sentence. *See e.g., Louisiana v. Brown*, 51,418 (La. App. 2 Cir. 6/21/17), 273 So.3d 442 (affirming juvenile's sentence of life without the possibility of parole, with statutory parole eligibility after serving thirty-five years in prison, for second-degree murder); *Nebraska v. Cardeilhac*, 876 N.W.2d 876 (Neb. 2016) (affirming a juvenile's sentence of sixty to life for second-degree murder); *South Dakota v. Quevedo*, 2020 S.D. 42, 947 N.W.2d 402 (affirming a juvenile's sentence of ninety years to life, with parole eligibility after forty-five years, for second-degree murder).  Other state courts are currently grappling with the same issue presented here. *Michigan v. Eads*, ---N.W.3d ---, 2025 WL 223470 (Mich. Ct. App. 2025) (appeal granted, 25 N.W.3d 118 (Mem), Sept. 10, 2025) (finding that a juvenile's sentence of fifty to seventy-five years for second-degree murder was cruel and unusual).  As such, there is not a clear consensus in courts throughout the nation that Mr. Castaner's sentence is contrary to the law.

[¶33]  Considering the data and research presented to this Court, there is not a clear consensus among either state legislatures or courts that leads us to conclude Mr. Castaner's sentence contravenes contemporary standards.  While Wyoming is in the minority of states that permit sentences as lengthy as Mr. Castaner's, the sentence is consistent with those permitted in various other state legislatures.  In addition, there are various state courts that have affirmed sentencing juvenile offenders to longer sentences than Mr. Castaner's for the crime of second-degree murder. Therefore, we hold that Mr. Castaner's 42-to-75-year sentence for second-degree murder is not unusual under Article 1, Section 14, of the Wyoming Constitution.

## CONCLUSION

[¶34]  We find that the district court's sentence of 42-to-75 years of incarceration for a juvenile convicted of one count of second-degree murder was legal under Wyoming law.  Further, Mr. Castaner failed to demonstrate a clear consensus of state legislatures has abandoned the sentencing practice, or that a clear consensus of courts has deemed his sentence to be contrary to the law.  Therefore, Mr. Castaner's 42-to-75-year sentence for second-degree murder, that he committed as a juvenile, was not unusual under Article 1, Section 14 of the Wyoming Constitution.

[¶35]  Affirmed.